JOHN WILKINS v. THE STATE.

*No. 1002.  Decided March 4th, 1896.*

1.  **Continuance—New Trial—Practice on Appeal.**

On appeal, the court, in passing upon the action of the trial court in overruling a motion for new trial, based upon supposed error in refusing a continuance, will look to the fact as to whether the absent testimony was probably true when considered in the light of the evidence adduced at the trial; and, when it appears that the evidence was material, but not probably true, it will be held that no error was committed in refusing the continuance.

2.  **Same—Controverting Affidavits of Witnesses.**

An application for continuance is properly refused where the State has procured and filed the affidavits of the witnesses therein named, emphatically contradicting the matters proposed to be proved by them; and, it is not error to permit the prosecution to file such affidavits.

3.  **Confessions—Bill of Exceptions.**

A bill of exceptions reserved to the admission of proof of confessions, over defendant's objections, should specifically point out the objection or ground of exception; and, where this has not been done, the bill of exceptions will not be revised.

4.  **Murder—Evidence Tending to Implicate Other Parties too Remote When.**

On a trial for murder, proposed evidence that a party or parties assaulted deceased about a year before is too remote where it is not pretended nor offered to be proved that said party or parties were in the county when deceased was killed, or had been seen in the county for months previous to the killing.

5.  **Murder in the First Degree—Perpetration of Robbery—Charge.**

On a trial for murder, alleged to have been committed only with "malice aforethought," it is not error for the court to charge that, "all murder committed in the perpetration or attempted perpetration of robbery, is murder in the first degree." It is settled that under an indictment charging murder with malice aforethought, the accused can be convicted of murder in the first degree if it were in the perpetration or attempted perpetration of robbery.  In such case it is the duty of the court to define robbery.

6.  **Same—Charge—Not Matter of Complaint When too Favorable to the Accused.**

A specific portion of the charge of the court may be erroneous, but, when it is more favorable to the accused than he was entitled to upon the particular questions indicated, the accused has no ground to complain.

7.  **Murder in the First Degree—Circumstantial Evidence Sufficient.**

See, evidence, which, though circumstantial, is held amply sufficient to establish the guilt of the accused of murder in the first degree to a moral certainty and beyond a reasonable doubt.

APPEAL from the District Court of Johnson.  Tried below before Hon. J. M. HALL.

This appeal is from a conviction for murder on the first degree, the punishment being assessed at death.

The following condensed substantial statement of the material facts in the case, is taken from the brief filed for the State in this appeal:

The appellant, John Wilkins, was indicted at the November term of the District Court of Johnson County, Texas, 1895, charged with the murder of G. Taylor, said to have been committed in said county, in said State, on or about the 31st day of October, 1895.  G. Taylor, de-

ceased, lived alone on his farm and ranch, in the extreme eastern portion of Johnson County, Texas, and his nearest neighbor lived a quarter of a mile or more from him. Taylor sometimes kept a family of tenants in the house with him, and at intervals a hired hand. For several months prior to his death, he had been keeping house alone, up to two or three days before his death, when the appellant, John Wilkins, was employed by him as a farm hand. The house in which Taylor lived was a three-room structure, having two rooms facing north, and a shed room, used as a dining-room and kitchen, besides porches, etc. On Saturday, the 1st of November, 1895, his house was broken into by neighbors, on account of a suspicion that all was not well within. They found the doors nailed up. On removing the nails from the door that led into the kitchen and dining-room, they discovered the dead body of G. Taylor, lying on the floor, near the table, and the surroundings, as will be disclosed by the record, show he had been murdered, while sitting at his supper table. Thereafter, his pockets, as well as the premises, had been ransacked; the doors nailed up, cloths hung over the windows, so that no one could see in from the outside. The murder had been committed by firing into the deceased with a shotgun, and with a pistol. As before stated, deceased had lived in this house alone up to the time of two or three days before his death, when appellant, John Wilkins, went to live with him.

An inspection of the record will develop the following material facts connecting the appellant with the murder: Appellant, a practical stranger in the community, was first seen on Tuesday before the murder on Thursday night, wending his way in the general direction of Taylor's place, having made the start from within about a quarter of a mile of Auburn, a few miles off. He rode with a man named Brown part of the way, to whom he made false statements, as to where he had been working, etc. He stopped next, for a few minutes, with a man named Bridges, who was an old acquaintance of his, to whom he made false statements concerning his whereabouts and doings just prior to their meeting. He left Bridges, without stating where he was going. The next seen of him, he was on the place of Taylor on Wednesday, at which time, in a conversation with one of Taylor's tenants, he stated that he was thinking of working out a horse, etc., with Taylor.

On Thursday he was seen at Taylor's house in company with Taylor, by a neighbor boy, who had dropped in to call on Taylor. In the general conversation between the three, it was then stated that appellant was to put in the winter at Taylor's. About 1 o'clock on Thursday evening, Taylor left home in company with his neighbor, or about the same time, on a trip to transact some business, the nature of which is not disclosed. He was, at that time, riding a horse, saddle and bridle, and had, on his person, his watch and chain, all afterwards shown to have been in possession of appellant immediately after the murder. Taylor had a shotgun in his house.

Dropping Taylor for the present, we will take up Wilkins. He was

last seen at Taylor's house about an hour by sun, on Thursday evening. At that time he had occasion to use Taylor's shotgun. He also had in his possession a 38-calibre pistol, and there was also seen by the witness at the time, a razor, afterwards found in his possession. He made no statement to any of the witnesses, who saw him at this time, with reference to any intention he had of leaving the place, or the employ of Taylor, if employed he was. When the witness left him he was cutting wood, and this was the last seen of him until he arrived in Cleburne, early the next morning, distance from Taylor's twenty-two to twenty-three miles.

Now, Taylor was last seen alive on Thursday night at 9 o'clock, at a neighbor's, who lived a mile or two miles from him, where he stopped on business, and then left for home. Early next morning his tenants went to see him on business. Arriving at his house, they found it in the condition it was when his body was discovered on the succeeding day—Saturday; that is, cloths were over the windows, and the doors were nailed up. On Saturday, when the body was discovered and examined, it was found that a charge of shot from a shotgun, had entered the head, and a 38-caliber pistol ball had entered the body. One or more of his pockets were turned wrong side out, and there was missing from the premises the watch and chain, worn by Taylor when he left home on Thursday; two razors were known to be gone from the house; the shotgun, the horse, saddle and bridle, that he rode off on Thursday. The trunks belonging to him had been broken open, and the contents scattered about the house, showing indubitably the motive of his murder to have been that of robbery. On Friday morning, at sun up, the appellant, John Wilkins, rode into Cleburne. He sold at auction shortly afterwards, the horse, saddle and bridle that Taylor was last seen alive with, at 9 o'clock on Thursday night. He was arrested shortly afterwards on suspicion of having stolen the horse that he sold. When searched, there was found on him Taylor's watch and chain, his two razors, and a 38-caliber pistol, in addition to the horse, etc., being identified as Taylor's. He made statements at the time he was selling the horse, as to his possession and ownership, which were afterwards shown to be false. On being taken to the jail, and after having been duly warned by the sheriff, he repeated the statements he before made as to his possession of the property. Arriving at the jail he broke and ran, firing four shots at the sheriff from the 38-caliber pistol. Immediately on the sheriff coming up to him, he made the declaration that he wished he had sold out; it was not the horse case he was afraid of either, it was something worse behind. At that time there was found to be goat hair on his coat and sleeves. He made a false statement as to where he got the hair on him; it developing on the trial that Taylor had a herd of goats, and two or three sacks of goat wool in his house, that were found open when the body was discovered. The shotgun, missing from the place, was found on Friday, where it had been thrown in a field, on the road leading from Taylor's to Cleburne. The horse tracks corresponded with those of the

horse that appellant rode into Cleburne.    Many other material facts and
circumstances will appear from an inspection of the record, tending to
connect appellant with the crime, that it is not necessary to mention
here.    The most material facts have been stated.

The facts pertaining to defendant's applications for continuance are
sufficiently stated in the opinion.    The objections and exceptions urged
to the testimony of the witnesses, Stewart and Long, as to the quasi
confessions of the defendant, are not stated in defendant's bills of ex-
ceptions Nos. 3 and 4.

Defendant proposed to prove by the witnesses, Daniels, Townsend,
Taylor and Rogers, that about a year prior to this homicide, some un-
known parties had trouble with deceased, and that deceased had been
assaulted, beat over the head with a pistol and shot at by said parties;
and that deceased had informed said witnesses that he expected to be
murdered at home in the night time by these parties.    And also pro-
posed to prove that a warrant had been issued for said parties, charging
them with assault with intent to murder deceased, and placed in the
hands of the officers, but had never been executed by the officers.    The
court excluded this evidence.

In his modification and explanation of defendant's bill of exceptions,
the court rehearses the statements made by these witnesses in connection
with this matter, and states:    "The objections (by the State) were that
the offered testimony was irrelevant and immaterial, and did not tend to
prove any issue in the case.    That it was not shown or offered to be
shown, that any of the party or parties, alleged to have assaulted the
deceased, were in the county at the time the deceased was killed, or had
been in the county for months previous to the killing."

*Bledsoe & Bledsoe*, and *Mason Cleveland*, for appellant.

*D. W. Odell*, County Attorney of Johnson County, and *Mann Trice*,
Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the
first degree, and his punishment assessed at death, and he prosecutes
this appeal.    The State having announced its readiness for trial, the de-
fendant presented his first application for a continuance for the want of
the testimony of one Dean, alleged to reside in Hunt County.    The testi-
mony of Dean, as set out in the application for a continuance, is material.
But in passing upon the action of the court in overruling the motion for
a new trial based upon this matter, we look to the fact as to whether the
testimony was probably true.    After reading the statement of facts care-
fully, we are of opinion that, if Dean had been present, no juror
would have believed him if he had testified to the facts set out in the
application.    The testimony in the case, and all of the circumstances,
and the quasi confession of the defendant, render it absolutely certain,
to our minds, that his testimony is not probably true; and the court did
not err in refusing to continue the cause.    The process to Hunt County

for these witnesses was returned "Not found." Appellant states that he accompanied him to Cleburne on the morning after the homicide, the same morning of his arrest. No person was found who had seen Dean.

After the State had introduced its evidence, and rested, the attachments for M. M. Wright and Allen Hunter Wright were returned, showing that the said witnesses were in bed, sick, and could not attend the trial, whereupon counsel for the appellant made an additional application to continue the case on account of the absence of the testimony of these witnesses. This was refused, and appellant reserved his bill of exceptions. We learn from the record the facts expected to be proven by these witnesses. However, their affidavits were procured and filed, and they contradict most emphatically the facts that they knew anything about the matters proposed to be proven by them. Let it be conceded that the court erred in not permitting the appellant to file an additional application to continue the cause, the subsequent facts developed show that the defendant could not have been injured by this ruling. If the continance had been granted for the testimony of these witnesses, it is evident that upon another trial they would not have sworn to the facts stated in his application, but would have traversed his affidavit in this respect. Hence there could have been no injury in this matter. There was no error in permitting the County Attorney to file the affidavits of the absent witnesses, M. M. Wright and Albert Hunter Wright.

The State proved by two witnesses, W. A. Stewart and H. F. Long, the confessions made by the appellant, to which the defendant reserved his bill of exceptions. The exception made to the introduction of these confessions is as follows: "To this evidence the defendant objected, which was by the court overruled, to which ruling of the court the defendant excepted in open court, and tenders this, his bill of exceptions, and asks that the same be approved and signed," etc. There is no ground of exception or objection stated. This is too general to require a revision of the action of the court in admitting the confessions. It is the duty of the counsel to specifically point out the objection. This was not done, hence it will not be considered by this court. The confession of the appellant may have been admissible under certain circumstances. Whether the predicate was properly laid or not, we are not called upon to say, for there was no objection to the predicate. Appellant proposed to prove some facts and circumstances which remotely pointed to the theory that perhaps some one else had killed the deceased. The facts proposed to be proved were too remote, and the court did not err in rejecting this evidence. It was not pretended, nor offered to be proven, that the party or parties alleged to have assaulted the deceased about a year before were in the county at the time the deceased was killed, or had been seen in the county for months previous to the killing. The witness, Taylor, states that he had never heard or seen any of said parties since a very few days after the assault. See, Kunde v. State, 22 Tex. Crim. App., 65; Henry v. State (Austin term, 1895), 30 S. W. Rep., 802. The charge of the court is objected to because it instructs the jury

that "all murder committed with express malice is murder in the first degree;" and "the law declares that all murder committed in the perpetration or attempted perpetration of robbery is murder in the first degree." The last sentence is objected to because the indictment in this case only charges this defendant with murder with malice aforethought, and nowhere charges this defendant with murder in committing or attempting to commit the offense of robbery. The contention of the appellant in both particulars has been decided against him. See, Sharpe v. State, 17 Tex. Crim. App., 486; Giles v. State, 23 Tex. Crim. App., 281. There was no error in defining robbery, because it is settled that under the indictment charging murder with malice aforethought the accused can be convicted of murder in the first degree if it were in the perpetration or attempted perpetration of robbery. It was the duty of the court to define robbery.

In the motion for a new trial the following charge given is assigned as error: "You will not regard any statement made by any of the witnesses to the effect that the defendant tried to escape from the sheriff, and that he shot at the sheriff while trying to escape, as evidence in this case; nor will you regard any statement made by the defendant at that time, if any, as evidence, unless you believe the same tends to connect the defendant with the killing of G. Taylor. If you do so believe, then you may consider it evidence for that purpose only, and give it such weight as, in your judgment, you may believe the same entitled to receive." There was no objection to the evidence upon which this charge is predicated such as we can consider. There may have been a predicate laid by the State for its introduction as original criminative evidence. It certainly tends cogently to establish the guilt of the accused, but the charge complained of leaves the fact of such tendency to the jury. The fact that it was limited to this purpose, and not allowed to be considered by the jury as contradictory of appellant's testimony, is a matter of which he cannot complain. The same observations apply to the charge as to the property of the deceased found in the possession of the appellant on the next morning after the homicide. Both of these charges are most remarkable, but they are not presented to us in such shape as to make it appear that they were injurious to the appellant. On the contrary, they are more favorable to appellant than he was entitled to. The deceased was murdered on Thursday night. The next day, by sunup, appellant was in Cleburne, some twenty-two miles distant, and in possession of the mare and other personal property of the deceased, trying to dispose of the mare and saddle. These facts demonstrate that he had possession of the fruits of the robbery, and no intelligent jury could have failed to use them as powerful criminative facts against the accused. We do not understand upon what ground the court instructed the jury that they might pass upon the competency and pertinency of such evidence. They were among the strongest facts proven; but he gave the jury the right to disregard them, if they wanted to, instructing the jury, however, that if they did believe that the same "tends to connect the

defendant with the killing of G. Taylor,   *   *   *   give it such weight as, in your judgment, you may believe the same entitled to receive, and for that purpose only." The appellant testified in the case. His confessions and conduct when arrested and before, showing that he was in possession of the fruits of the murder and robbery, were very powerful facts tending to contradict his version of this transaction. The evidence in this case, though circumstantial, to our minds establishes the guilt of the accused beyond any sort of doubt. The criminative facts were all fully proven. They were of such character as to lead to the conclusion of guilt to a moral certainty. The deductions from them were not strained; they were natural, reasonable, and certain. There was no basing of presumptions upon presumptions, but all the facts necessary to the conclusion of guilt were clearly established, and they had but one tendency, and that was the guilt of the accused, pointing with unerring certainty to his guilt and in no other direction. The facts in this case are much stronger than those in the case of Gonzales v. State, 19 Tex. Crim. App., 394—a case of circumstantial evidence, in which this court approved the verdict. Again the circumstances show that though in the perpetration of robbery, the killing was a deliberate assassination. But be this as it may, it was murder in the perpetration of a robbery, and hence murder of the first degree. The judgment is affirmed.

*Affirmed.*

[NOTE.—The appellant filed a motion for rehearing which was overruled without a written opinion.—Reporter.]