## BURREL OATES v. THE STATE.

### No. 2950.   Decided April 12, 1905.

**1.—Murder—Severance—Turning States Evidence.**

Where upon motion by defendant for a severance from his codefendant, the State answered that the latter had entered into an agreement with the State to testify for the State against defendant, there was no error in overruling the motion. Following Stevens v. State, 42 Texas Crim. Rep., 154; Ex parte Greenhaw, 41 Texas Crim. Rep., 278.  Distinguishing Price v. State, 40 S. W. Rep., 596; King v. State, 35 Texas Crim. Rep., 472; Shaw v. State, 39 Texas Crim. Rep., 161; Manor v. State, 77 S. W. Rep., 786; Wolf v. State, 9 Texas Ct. Rep., 946.

**2.—Same—Indictment—Defining Robbery Not Required.**

An indictment which recited the language of the statute (article 711, Penal Code) that the murder was committed with express malice in the perpetration of robbery, without further setting out the robbery, was sufficient; the court instructing with regard to the essential elements of robbery.

**3.—Same—Special Venire—Practice.**

In a capital case, the defendant has the statutory right to have his list of jurors drawn from the entire list of jurors for the term; and where the jury for the term consisted of 520 names and 150 names were first drawn therefrom for two other codefendants, leaving 370 names, from which the special venire for defendant was drawn, to which he properly excepted in due time, there was error.

**4.—Same—Requested Charge.**

Where the evidence did not show that the wife of the deceased killed her husband, there was no error in refusing a charge that in such an event to acquit the defendant.

**5.—Same—Charge of Court—Definition of Robbery by Fire Arms.**

Where the court charged in a case of murder that robbery committed by fire-arms may be a capital felony, especially where that character of offense was proven, there was no error; the court also defining express malice and robbery and applying them to the evidence.

**6.—Same—Charge of Court—Accomplice.**

Where a codefendant had turned State's evidence and the court did not submit this matter, but instructed the jury that an accomplice must be one connected with the crime in some way, the said witness claiming that he was not connected with the murder for which defendant was being tried, and the court not instructing the jury that he was an accomplice, there was reversible error.

**7.—Same—Charge of Court—Limiting Testimony.**

Where there could be no danger that certain impeaching testimony by the State would be appropriated by the jury for any other purpose, there was no error in the court's charge in failing to so limit the same.

Appeal from the Criminal District Court of Dallas.   Tried below before Hon. E. B. Muse.

Appeal from a conviction of murder in the first degree; penalty, death.

The wife of the deceased testified that Holley Vann and defendant came into deceased's store by a side door about ten or fifteen minutes after 9 o'clock on the night of the 29th day of November, 1904, and called for a sack of Durham tobacco, and as deceased handed them the tobacco, the two men drew their pistols and told him to hold up his

hands.   Deceased, after remonstrating with them awhile, told them to go to the cash drawer and help themselves and to take whatever they wanted, but they never answered him and tried to shoot him.   The witness then got up to get her pistol out of the bedroom, when one shot was fired.   The next shot was fired by defendant.   The first bullet struck her ribbon in her hair, the next at her side.   She got the pistol and entered the store and as she opened the screen door tried to shoot defendant, and thought she had hit him, but was so excited the bullet missed him, and when she shot at the defendant, Vann shot straight into her husband's breast; the defendant had hold of her husband's right hand and would not give him a chance to protect himself.   Defendant had a pistol and when her husband was shot defendant turned his hand loose.   When Vann shot deceased, the latter took his wife's pistol in his left hand, but the pistol dropped on the floor by his side and he exclaimed, "Fannie, I am dying!" and then ran to the bedroom and fell on the floor by the bed; she put him on the bed and he died in a few minutes.   The cash drawer, which contained some $20, was found on the floor and the money taken out.   It seems that during the trial of Vann, this witness testified that defendant fired the fatal shot according to the agreement of counsel.   Another witness for the State testified that after the shooting he saw defendant in the light and recognized him when he and Vann left the store after the shooting.   The State's witness McCue, who had turned State's evidence, testified that he in company with Vann and the defendant at about 7 o'clock on the night of the murder, drove in a buggy together to Oak Cliff and shortly returned to the city of Dallas and when they approached the premises of deceased, Vann said something about holding him up; that deceased had money and there was a stake in it; the defendant assented, but that he, witness, dissented.   Vann and defendant then got out of the buggy, the former telling witness to go and put up the horse and buggy, and they said they were going to hold up deceased.   About that time witness heard them say something about changing pistols and defendant wanted to give Vann a big pistol.   Witness did not see them leave the spot where they were talking when he drove off.   This was about 9 o'clock at night.   After witness had put up the horse, some half an hour after, he met defendant with Vann's brother.   Defendant told him, after calling witness aside, that they had held up deceased; that several shots were fired and one of them had hit him.   After an hour or such matter, witness again met defendant, who told him that they had killed deceased and that he thought he had killed him, and he said something about shooting Vann, that he was afraid he would holler, and that witness told him he had better let it alone where it was.   The defendant introduced testimony to prove an alibi; contradictory statements of deceased's wife and her failure to identify defendant at the jail among others who had been arrested for the crime; a quarrel between Vann and defendant shortly before the murder and robbery and other circumstances tending to sustain the alibi, and that deceased's wife accidentally shot and killed him.

*J. E. Forrest, W. Lindsay Bibb* and *A. S. Baskett,* for appellant.—The defendant was entitled to have Frank McCue placed on trial and acquitted, or have his case dismissed, to the end that he might have the benefit of his testimony free from the taint of an indictment against him, and free from the coercion and restraint imposed upon him by any pending contract or agreement with the State to dismiss his case against him provided he should testify substantially in a given manner designated in the terms of the contract. Shaw v. State, 45 S. W. Rep., 597; Price v. State, 40 S. W. Rep., 596; Manor v. State, 77 S. W. Rep., 786.

The statute prescribing the manner of selecting the special venire in a capital case is mandatory and relates to the essence of the venire, and its provisions should be strictly construed in favor of the accused and against the State, and a failure to comply with the same is reversible error if properly excepted to in limine. Burries v. State, 35 S. W. Rep., 164; Farrar v. State, 70 S. W. Rep., 209; Bates v. State, 67 S. W. Rep., 504; Harrison v. State, 3 Texas Crim. App., 558; Murray v. State, 3 S. W. Rep., 107.

On question of indictment: Withers v. State, 17 S. W. Rep., 725; Hill v. State, 41 Texas, 253; Sharpe v. State, 17 Texas Crim. App., 486; Tooney v. State, 5 Texas Crim. App., 163; Warnington v. State, 1 Texas Crim. App., 168; 1 Wharton American Crim. Law., sec. 629; I Wharton Crim. Law., sec. 630; U. S. Howard, 3 Sumn., 12; State v, Noble, 15 Me., 476; 1 Greenleaf Evidence, 15 ed., par. 63–65; McLaurine v. State, 13 S. W. Rep., 992; and authorities cited.

On question of charge requested that deceased was accidentally killed by his wife: Taylor v. State, 55 S. W. Rep., 961; Commonwealth v. Campbell, 7 Allen, 541; Butler v. People (Ill. Sup.), 18 N. E. Rep., 338, 1 L. R. A., 211; 1 Wharton on Crim. Law, 7th ed., par. 999, par. 964a and par. 941; 1 Wharton on Crim. Law, par. 637.

It is only murder committed in the perpetration of or attempt to perpetrate a robbery that is made murder in the first degree by our statute, and before such killing can be murder of the first degree by reason thereof, it must possess the characteristic element of murder, that is, it must be a killing upon malice aforethought, either express or implied.

The court charged that a killing committed in the perpetration or attempt to perpetrate a robbery is murder. Willson's Crim. Code., art. 711; Pharr v. State, 7 Texas Crim. App., 472; Tooney v. State, 5 Texas Crim. App., 163; Sharpe v. State, 17 Texas App., 486; Wharton on Homicide, 2 ed., par. 184 and 185; Wharton Crim. Law., 8 ed., par. 384.

When a witness is shown to be an accomplice in law but his testimony on the witness stand is such as if true shows that he had no such guilty connection with the offense charged as would make him an accomplice with reference to his testimony, then the court should determine that issue as a matter of law and so instruct the jury and should not leave it as an issue of fact to be determined by them. Hill Sessions v. State, 37 Texas Crim. Rep., 58; Armstrong v. State, 26 S. W. Rep., 829; Elizando v. State, 31 Texas Crim. Rep., 237; White v. State, 30 Texas

Crim. App., 652; Williams v. State, 42 Texas, 392; Wilkerson v. State, 57 S. W. Rep., 956; Hatcher v. State, 65 S. W. Rep., 97; Williams v. State, 25 S. W. Rep., 629.

When a witness is under an indictment charged as a principal for the same offense as is the defendant, such indictment still pending, and such witness testifies against the defendant upon a written agreement with the State to the effect that if said witness will testify substantially as detailed in said contract, the State will then dismiss her prosecution against him, such witness is in law an accomplice and his testimony must be corroborated. Zollicoffer v. State, 16 Texas Crim. App., 312; Williams v. State, 42 Texas, 392; Cohea v. State, 11 Texas Crim. App., 153.

The charge of the court upon the question of accomplice testimony should, as upon any other issue in the case, apply the law to the facts in evidence bearing upon that issue.

The charge of the court on the issue of accomplice testimony is in the abstract, and nowhere applies the law governing same to the facts in evidence calling for said charge. Armstrong v. State, 26 S. W. Rep., 829; Wilkerson v. State, 57 S. W. Rep., 956.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

Before announcement of ready for trial, appellant made an affidavit for a severance. The affidavit showed that there was pending against Hollis Vann, Frank McCue and Will Dalton separate indictments, charging them with the same offense; that the evidence of all of said parties was material to appellant's defense; that there was not sufficient evidence against said parties, or either of them, to secure their conviction; therefore he asked that said parties be first put upon trial. It is disclosed that Hollis Vann was tried first and convicted; so the question of severance passes out as to him. The bill does not make it clear as to what disposition was made of Dalton's case; but as to Frank McCue it shows that the motion was overruled. There was no counter affidavit on his part controverting appellant's application, or desire that appellant be first put upon trial. The court explains as to Frank McCue that he had made an agreement and contract in writing with the State, to testify against defendant Burrel Oates; the State agreeing to exempt said McCue from prosecution. Thus the question is presented whether the State has the right to defeat a motion to sever, by showing an agreement between the State and the party against whom the severance is asked, to turn State's evidence. We are referred to a number of cases in which a severance, when claimed under the statute, is recognized as a matter of right: Price v. State, 40 S. W. Rep., 596; King v. State, 35 Texas Crim. Rep., 472; Shaw v. State, 39 Texas Crim. Rep., 161; Manor v. State, 77 S. W. Rep., 786; Wolf v. State, 9 Texas Ct. Rep.,

946. These cases are not applicable, inasmuch as the question of an agreement to turn State's evidence is not involved in either of said cases. This exact question was decided in Ex parte Greenhaw, 41 Texas Crim. Rep., 278; and in Stevens v. State, 42 Texas Crim. Rep., 154. Under these cases it is held that a right to a severance can be defeated altogether, when the State shows that it has entered into an agreement with the party against whom the severance is asked, that such party shall testify for the State. In such case the party must comply with the agreement before he can even ask a dismissal of the case. In other words, there must be a compliance with the terms of the contract on the part of such person agreeing to turn State's evidence, before he can claim immunity. We accordingly hold that the State's answer to the motion to sever, that it had made and entered into an agreement with the party or parties against whom the severance was asked, that such person should turn State's evidence was a sufficient answer to appellant's motion requesting a severance; and the court did not err in overruling said motion.

Appellant made a motion to quash the indictment because it failed to set out the essential elements of robbery. The indictment here merely recited the language of the statute (article 711, Penal Code) that the murder was committed with express malice in the perpetration of robbery, without further setting out the robbery. We think this was sufficient. We do not understand it to be contended that the court failed to instruct the jury in its charge with regard to the essential elements of robbery; this was done. See Wilkins v. State, 35 Texas Crim. Rep., 525; Ransom v. State, 70 S. W. Rep., 960.

Appellant made a motion to quash the special venire because the clerk in drawing the same failed to place the names of all the jurors for the term in the box. This is explained by the court, by stating that there were two other defendants (Vann and McCue) charged with the same offense by separate indictments, and that a list of seventy-five jurors were drawn in each case from the box before appellant's jury was drawn. That is, it is shown that the jury for the term consisted of 520 names; that in Vann's case, a list of seventy-five jurors were first drawn, and then another list of seventy-five jurors were drawn in the McCue case, from the remainder; and then appellant's jury was drawn, without first replacing the names of those drawn in the two other cases in the box. So that, out of 520 jurors, appellant had only a list of 370 to draw from. It is insisted by the State that this was correct practice, because the jurors in the other two cases would evidently be disqualified in appellant's case. To support this contention the State refers us to Kipper v. State, 8th Ct. Rep., 852. However, an examination of that case discloses that no objection was made to the special venire until the same was exhausted; and the court then summoned other talesmen, and these were brought in, when, for the first time, objection was urged. Besides, it appears from affidavits that this course was agreed to and endorsed by appellant. Here the objection was made at the threshold,

and there can be no question but that the objection was timely. The statute requires (article 647) that whenever a special venire is ordered, the names of all the persons selected by the jury commissions to do jury service for the term of which such venire is required, shall be placed upon tickets of similar size and color of paper, and from this list the special venire ordered is drawn by the clerk. As was said in Burries v. State, 36 Texas Crim. Rep., 13; 35 S. W. Rep., 164; in construing this statute and others relating to special venires: "These and other articles following, as we understand it, provide the machinery for the trial of a capital case, and an essential part of the machinery is a special venire. This special venire a defendant, when brought to trial in a capital case, has the right to demand. Nor can he be brought to trial until he has had one day's service of such special venire. In this case he was not only refused one day's service of the special venire prior to his trial, but he was not tried by a special venire at all, but, as appears from the bill of exceptions, by the regular jury. If it was competent for him to waive trial by special venire, it does not appear that he did so in this case. On the contrary he claimed his right to a day's service of the list of special veniremen summoned for his trial. It did not excuse the State because neither the State nor appellant called for a special venire, or failed to have such special venire summoned for the trial, because the law makes that an essential part of the machinery by which one accused of a capital offense is to be tried. * * * The law guarantees to persons to be tried for offenses, the character of tribunal authorized and appointed by law to try them; and because such a tribunal was not used, it is no answer to say that sufficient time was not left during the term to try the party under the manner and by the character of jury authorized by law."

In Hunter v. State, 34 Texas Crim. Rep., 599, it was said that the clerk had no power in drawing the special venire to curtail the number of jurors ordered by the court, and because he did so, the special venire was quashed. In Weathersby v. State, 29 Texas Crim. App., 278, it was held that after the exhaustion of the special venire it is proper practice to summon talesmen. And in Bates v. State, 67 S. W. Rep., 504, it was held error, after the special venire was exhausted, to bring in jurors for the week. The cases referred to show that the court construes these statutes with reference to constituting a special venire to try a defendant, with that degree of strictness which indicates that the provisions of the statute are regarded as mandatory. In this case it is urged that the court was justified in disregarding the statute which requires the special venire in each case to be drawn from a full list of all the jurors for the term, on the ground that the list had been diminished, by drawing special venires for two other defendants charged with the same offense by separate indictments. In answer to this proposition we ask, how could the court know that all of these jurors would be disqualified if drawn? Only twelve would be selected in each panel, and if both cases had been previously tried, this would really disqualify but twenty-four

out of one hundred and fifty. Of those not taken, we cannot tell how many might have disqualified themselves on account of prejudice against appellant's codefendants, who might qualify themselves as to this defendant. Moreover, it could not be ascertained whether both of said cases would be tried, or whether either of said cases would be tried, in fact only one of the cases was tried. This would certainly leave seventy-five jurors against whom no possible objection could be urged; and it cannot be contended that appellant did not have the right to have these seventy-five jurors drawn on his special venire. It occurs to us that all of the reasons urged by the State for the departure from the statute are merely speculative. Appellant had the statutory right to have his list of jurors drawn from the entire list of jurors for the term. The denial of this right by the court was error.

Appellant complains that the court failed to charge to the effect that if Mrs. Aronoff shot and killed deceased, defendant would not be guilty. We have examined the record carefully, and, in our opinion, there is no evidence calling for a charge of that character. The testimony is positive on the part of Mrs. Aronoff herself that Vann (appellant's codefendant) shot and killed her husband. We do not understand any circumstances proven in the case to gainsay this theory. The fact that one of the physicians stated that the wound was inflicted with a 38-caliber pistol is merely his opinion. The fact that this physician states that he inserted his little finger into the wound an inch or more would indicate it was inflicted by a much larger pistol than a 38. Besides, there is no proof (that we recall) as to the character of pistols used by appellant and his codefendant. Either appellant or Vann may have had a 38. If either had a 41 or 45, the wound was more likely inflicted with such a weapon than a 38. Reviewing the evidence, we do not believe the court was required to give the charge above indicated.

The complaint is made that the court's charge, in defining robbery, stated that robbery committed by firearms may be a capital felony. It does not occur to us that there was error in this, especially as that was the character of the offense proven. We believe the court was justified in charging that murder committed in the perpetration of robbery is murder in the first degree. The court had previously defined express malice, and had also defined robbery; and in applying the law to the facts, the court not only told the jury that they must believe the homicide was committed in the perpetration of robbery, but it must be done upon malice aforethought.

We believe the court committed error in not charging directly that Frank McCue was an accomplice; that is, if we take the charge as given on this subject, it was clearly misleading. The court in this connection defined an accomplice as "Any one connected with the crime committed, either as principal offender, as an accomplice, as an accessory or otherwise. It includes all persons who are connected with the crime by unlawful act or omission on their part, transpiring either before, at the time, or after the commission of the offense, and whether or not

he was present and participated in the commission of the crime." According to the proof the testimony not only failed to connect McCue with the commission of the offense, either before, at the time of, or after its commission, but the testimony on this subject, coming from McCue himself, showed that he was not so connected. So that, the only evidence which rendered him an accomplice was, that he was charged by indictment with the offense, and had made an agreement with the State to have said case dismissed, in consideration that he would testify to certain facts for the State. If the court had instructed the jury properly as to these matters, perhaps no complaint could be made; but the mode adopted of leaving it to the jury to determine from other considerations, whether or not he was an accomplice, did not adequately present this matter to them. Bareaso v. State, 42 Texas, 260.

We do not believe the court was called on to instruct the jury how they were to regard certain evidence introduced by the State to discredit certain of the witnesses for the defendant. There was no possible danger that this testimony would be appropriated by the jury for any purpose than that for which it was introduced, and there was no occasion for the court calling the attention of the jury to this impeaching testimony.

We do not deem it necessary to discuss other assignments of error; but for those discussed and pointed out, the judgment is reversed and the cause remanded, in order that appellant may have a fair trial in accordance with the rules of law.

*Reversed and remanded.*

BROOKS, Judge (dissenting).—I do not think there is any reversible error in this case. While the statute directing the manner of selecting the venire is mandatory, still, I do not think the Legislature contemplated, nor can the courts be justified in holding that a harmless error or an immaterial violation of the provisions of the statute in reference to selecting a venire should operate to reverse a case. The facts show that there were originally 520 names in the box from which the venire was drawn; that 150 names were drawn from said box, leaving 370 names, from which appellant's venire was selected. It occurs to me that this would be such an immaterial violation, if violation at all, of the provisions of the statute as would not authorize a reversal of this case. Furthermore, as I understand the law, the charge of the court on accomplices is in strict accord with the approved precedents of this court. Therefore, I do not agree with the opinion of the majority.