ALEX LEVINESS v. STATE.

No. 25390. January 16, 1952.
Rehearing Denied February 27, 1950.
Appellant's Second Motion for Rehearing Denied (Without Written Opinion) April 2, 1952.

Hon. P. C. Matthews, Judge Presiding.

*Houston Thompson,* Silsbee, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of Cloyce Eloise Twitchell and the jury assessed his punishment at confinement in the penitentiary for life.

The trial was had in Chambers County upon an indictment returned in Hardin County, the venue having been changed following the reversal of a death penalty conviction in Hardin County. See Leviness v. State, No. 24,688, 155 Tex. Cr. R. 85, 230 SW(2) 814.

The deceased left Beaumont on the afternoon of September 28, 1948, to return to her mother's home in Colmesneil, Texas, where her three year old child was being cared for. She had gone to Beaumont and had rented an apartment to be occupied by her and her family upon the approaching scheduled return of her sea-faring husband. She was traveling in her gray colored Kaiser automobile.

A lady driver of a Kaiser car of similar description was seen to pick up two men on the outskirts of Beaumont. She drove away with them toward Colmesneil on a highway which passed through Hardin County, and was reported missing when she failed to reach home.

Several days later, on October 4, 1948, in a section of Hardin County composing a part of the area known as the "Big Thicket," a badly decomposed body was found which proved to be the body of Mrs. Twitchell, the deceased.

The Kaiser automobile was found in Harris County on the afternoon of the day Mrs. Twitchell left Beaumont.

Some months later officers investigating the crime, received information from one Darious Golemon implicating appellant in the murder. Appellant was apprehended in Orange, Texas, about 10 o'clock on the night of June 28, 1949, by a party of officers consisting of Sheriff Kern of Harris County, two state rangers and the assistant chief of police of Orange, and following his return to Hardin County and a visit to the scene of the crime, about 8:30 the following morning, signed a confession which was received in evidence over the objection of appellant, reading in part as follows:

"* * * In the month of September, 1948, I believe this was along the last of September, Darious Golemon and myself came to Beaumont, Texas, from Odessa, Texas, where we both had been working. We just stayed in Beaumont one or two days. While we were in Beaumont, Golemon and myself bought a .38 pistol from a Pawn Shop on Crockett Street. This was a second hand gun and cost $25.00. I paid $10.00 on this gun and Golemon paid $15.00. We planned to leave Beaumont, Texas, and pull some kind of a job. Golemon and myself left Beaumont hitchhiking. We were going North out the Eleventh Street road. A good ways out of town a woman traveling by herself and driving a Gray Kaiser Sedan stopped and picked us up. She ask us where we were going and Golemon told her we were going up on the other side of Kountze, Texas. This lady told us that she lived in Colmesneil, Texas. She told us that she had a young baby and that this baby was at Colmesneil with her mother. She also told us that her husband was a seaman and was out on a trip. She said that she had been to Beaumont and rented a house as she was expecting her husband back shortly. I was riding in the middle and Golemon was on the right side. When we got on the other side of Kountze, Golemon told this lady to

stop and let us out at a side road. Golemon got out of the car and then I got out. Golemon then got back in the front seat and pulled the pistol on this lady and told her to move over. He then told me to go around and drive the car. I started driving this car and when we got to the Honey Island road we turned to the left and went through Honey Island and came out on the Kountze-Saratoga road. We turned to the right on this road and went a short distance and then turned to the right again on a dirt road that went back into the woods. We went down this road about one hundred yards and stopped the car. We all three then got out of the car and started looking for a place to turn around. While we were out of the car the lady kept telling Golemon to put the gun up and she would feel a lot better. She told him again that she had a mother and baby at Colmesneil and for us to go ahead and take the car and let her go. About this time Golemon shot this lady twice, one shot hitting her in the stomach and the other one a little higher up, probably in the chest. The gun snapped and this lady started walking toward Golemon. When she got within reach he started hitting her over the head with the pistol. He hit her several times and she finally went down. He then told me to help him carry her over in the woods and get her off the road. I picked up her head and shoulders and he picked up her feet and we carried her about twenty or thirty yards off of this road into the woods. When we laid her down Golemon noticed that she was still breathing and had her eyes open. He hit her again with the pistol and the pistol broke into pieces. We then took several limbs and covered this lady up. I walked back to the car and Golemon went out through the brush and in just a few minutes I met him back at the car. He told me he had washed his hands and that he had buried the pistol. I told him that I had shook the ladies purse and that there was just a few pennies and nickles in the purse. We then got into the ladies car and drove to Houston. * * * On the Humble road near Houston we passed Golemons sisters house. Shortly after we passed Golemon's sister's house we turned to the right. We went down this road about two miles and crossed over some railroad tracks. Right after we passed these railroad tracks we turned to the left and drove a short ways and parked this Gray Kaiser car. There was a radio and some clothes in this car which we left. We walked through some woods back over the railroad tracks and while we were in the woods we both took a crap. I used a scarf that was in this ladies car to clean myself with. * * * We walked to Golemon's sister's house, which was about two miles

and spent the night. My clothes and also Golemon's were bloody. We burned these clothes in Golemon's sister's back yard. * * *"

Appellant insists that this appeal is ruled by **Prince v. State**, 155 Tex. Cr. R. 108, 231 S.W.(2) 419, and the authorities cited therein, and that the undisputed facts here show a coerced, forced, and involuntary confession as a matter of law, notwithstanding the finding of the jury that it was voluntarily made. He contends that the court's ruling in admitting the written confession deprived him of his rights under the 14th Amendment to the Constitution of the United States, referred to as the due process clause.

Harris County Sheriff Kern testified before the court and again before the jury to the effect that at the time of apprehending appellant in Orange he believed that if he had taken the time to find a magistrate before detaining appellant, that appellant would have fled; that appellant went with the officers willingly; that as they started driving toward Kountze appellant admitted that he was involved in the murder; that appellant wanted to take the blame for the whole thing and said that he used a pine knot to beat the deceased's brains out, and told the officers that he would take them to the scene of the murder in the "Big Thicket" and show them and tell them all that he knew about it, and he took them there; that during the questioning appellant spoke of the code of the penitentiary regarding telling on the other fellow, for which reason he did not believe appellant's confession that he had killed the deceased with a pine knot.

Sheriff Lindsey, of Hardin County, testified that the written confession was voluntarily made and signed after the proper warning had been given; that at his instance two doctors examined appellant and Golemon after the confessions were signed, in the course of which examination their clothing was removed; that he took appellant to the scene where the body had been found, and appellant pointed out the place nearby where he said Golemon went out to bury the gun; that in the direction and location pointed out by appellant a pistol was located but only after a diligent search with the aid of a mine detector. The broken gun was found buried in an armadillo hole.

The serial number proved this pistol to be the one sold at Sam Spector's store on Crockett Street in Beaumont on September 27th, which store was pointed out by appellant as the place

referred to in his statement as the "pawn shop" where he and Golemon had acquired the pistol, planning to leave Beaumont and "pull some kind of a job."

Further referring to the pistol, Ranger Klevenhagen testified:

"* * * I had not found this gun when this confession was taken, and no one else had, as far as I know. He made that statement like it is. Earlier he had said he had killed this lady with a pine knot, and I had not found the gun. Leviness gave me a satisfactory answer as to why he said a pine knot first, he then told me the kind of weapon that he used. He told me that in front of everyone that was present there, and he stood on that representation. He told me a pistol was actually used. In obedience to what he told me about the gun we found it."

The oral confession was testified to by the officers without objection, and all witnesses denied that there was any character of abuse or mistreatment of appellant and testified that the confession was voluntary. Appellant did not testify.

Under the facts we find no error in the ruling of the trial court in admitting the written confession and submitting to the jury the issue as to its having been voluntarily made as required by our statutes. We therefore overrule appellant's contention that a denial of his constitutional rights is shown or that the authorities relied upon are applicable to the facts here.

We further overrule appellant's contention that the statement of appellant is insufficient to connect him with the murder as a principal. The purchase of the pistol, the agreement to leave Beaumont and "pull some kind of a job," together with his acts in connection with the driving of the car and the disposition of the body show an intent and agreement to commit robbery or other crime with such pistol, if not to commit murder. A conspiracy to commit such crimes with firearms would include and embrace a murder committed by one of the co-conspirators in carrying out such unlawful enterprise. See Garcia v. State, 151 Tex. Cr. R. 593, 210 S.W.(2) 574; Hemphill v. State, 133 Tex. Cr. R. 257, 110 S.W.(2) 64; Wall v. State, 156 Tex. Cr. R. 239, 240 S.W.(2) 763.

Nor do we agree that the statement of appellant can be construed as indicating that he acted under duress in driving the

car and in disposing of the body, though he said Golemon told him what to do.

The acts of appellant in concealing the body and driving Golemon away from the scene alone would be sufficient to constitute him a principal to the murder, in endeavoring to secure the safety of his companion who committed such crime in his presence. See White v. State, 154 Tex. Cr. R. 489, 228 SW(2) 165.

The evidence being sufficient to sustain the conviction, and no error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant has very capably challenged our original opinion herein. He re-urges his contention that he was deprived of "due process of law" guaranteed to him by the 14th Amendment of the Constitution of the United States when the trial court permitted the introduction into evidence of appellant's confession. At the outset, we observe that appellant did not testify, nor did he offer any witnesses in his behalf. From this, it follows that appellant must have shown from the state's witnesses that the confession was secured in some manner heretofore denounced by this court or the Supreme Court of the United States in order to support his contention.

We observe, from the recent opinion of the Supreme Court of the United States in Gallegos v. Nebraska, 96 L. Ed., advance sheet opinion at page 88, that the rule in McNabb v. United States, 318 U. S. 332, to the effect that a confession is inadmissible if made during illegal detention, due to failure promptly to carry a prisoner before a committing magistrate, does not apply to trials in state courts.

In the case at bar, since there was no showing of torture, physical or psychological, appellant is relegated to the complaint that he was arrested without a warrant and was not taken before a magistrate forthwith.

This contention seems to have been decided adversely to

appellant in our recent opinion in Dimery v. State, 156 Tex. Cr. R. 197, 240 S. W. (2) 293. Goleman v. State, No. 25,504, this day decided.

In the instant case, the appellant was arrested somewhere between 9:00 and 10:30 in the evening, and the confession was signed the following morning at approximately 8:30. There is no showing of any brutality upon the accused, and the fact that several officers participated in the interrogation, and that one of them went out for coffee from time to time, does not in itself alone show that appellant was questioned in relays. It is obvious that these facts do not bring themselves within the ruling in Prince v. State, 155 Tex. Cr. R. 108, 231 S. W. (2d) 419, where the questioning covered a period of three days, or under the rule expressed in any of the cases cited therein.

The fact that appellant made an oral confession shortly after being apprehended lends corroboration to the voluntary nature of the written confession, to the introduction of which appellant now objects, just as did the plea of "guilty" at the preliminary hearing in the Gallegos case in the Supreme Court of the United States.

Appellant takes us to task for some of the statements of fact found in our original opinion. An analysis of the opinion will reveal that each of the statements complained of were quotes from the testimony of the witnesses. In stating the facts of a case, we do not draw our own conclusions, but attribute them to the witness who gave them at the trial.

Appellant again contends that he is not shown to have been a principal to the murder of Mrs. Twitchell and says that the cases cited in our original opinion do not support our conclusion. Without discussing them, we here hold that where two men pool their funds to buy a pistol, planning to "pull some kind of a job," and a third party is later killed during the course of a robbery at which both of the purchasers of the pistol were present, each of them is a principal to the murder.

Remaining convinced that we properly disposed of this case originally, appellant's motion for rehearing is overruled.