Ernest Benjamin SMITH, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 49809.

Court of Criminal Appeals of Texas.

Feb. 18, 1976.

On Appellant's Motion for Rehearing
July 14, 1976.

John F. Simmons, Dallas, for appellant.

Henry Wade, Dist. Atty., James B. Scott, Douglas D. Mulder, Stephen P. Tokoly and Winfield W. Scott, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, under Article 1257, V.A.P.C. and Article 37.071, V.A.C.C.P., death.[1]

1. This offense was alleged to have been committed on 29th day of September 1973. This was during that period of time when Article 1257 was in operation and before Sec. 19.03 became effective.

The record reflects that grocery store operator William Moon was killed during the commission of a robbery at his market.

■ By ground of error one appellant contends that the evidence is insufficient to support the conviction, since it was the appellant's co-defendant who killed the deceased during the robbery. Such a contention completely ignores the law of principals, and is without merit. *Thompson v. State,* Tex.Cr.App., 514 S.W.2d 275; *Leviness v. State,* 157 Tex.Cr.R. 160, 247 S.W.2d 115.

■ Appellant's next contention relates to the punishment hearing. Appellant claims that the evidence is insufficient to support the jury's answer of "yes" to Special Issue No. 2 [2] of Article 37.071, supra.

This appellant testified that he had been unable to obtain a regular job since his conviction for possession of marihuana in 1970, and that he was unemployed on the night of the homicide when he met George Holden and Howie Ray Robinson at the Pussy Cat Lounge. He stated that Holden asked if he wanted to make some money and that from his prior knowledge of Holden that he was not a "working individual", he knew that whatever Holden proposed would not be legal. Appellant testified that after he agreed to go with them he went to his home, changed clothes and got a pistol. He also stated he knew Holden had a pistol, which he gave to Robinson. They then went to the grocery store, where appellant and Robinson entered and Holden remained in the automobile. When appellant and Robinson found customers in the store; they left and did not re-enter until after the customers had left. At this point, appellant pointed the pistol at the attendant and told him, "This is a hold-up." When the attendant made a motion "behind his jacket", appellant called to Robinson, who shot and killed the attendant. We

pause here to observe that it was this appellant who first pointed his weapon at deceased and attempted to shoot him. It was only after the appellant's gun misfired that he called to his co-principal to complete the killing which he had attempted.[3] Following this, all the money, including the change, and a pistol kept by the attendant were taken, and the parties repaired to the house of a friend, where the fruits of the robbery were divided and the parties separated. Appellant spent the night in a house nearby.

Appellant's oral confession was also admitted into evidence.

Dr. James P. Grigson, a practicing psychiatrist appointed by the court to examine appellant, testified that his examination had led him to conclude that the appellant, though medically and legally sane, felt no remorse or sense of guilt as the result of his participation in this robbery-murder. Grigson also expressed the opinion that appellant's conduct in the future would not change. He further stated that his branch of medical science had found no cure for persons who were suffering from the type of personality disorder demonstrated by appellant.

Though not a serious one, this appellant had a criminal record. Of extreme importance is his apparent surrender to misfortune following his marihuana conviction. He made no effort to rehabilitate himself, and no serious effort to secure steady employment. There was no evidence that appellant was in any way under the domination of anyone, nor was he under any mental or emotional pressure. He simply went out to rob and was the first person who tried to kill his victim (according to his oral confession). After the killing, he testified, he paused long enough to secure a pistol from under the counter and when a cigar box containing coins spilled, he paused to

2. Article 37.071(b)(2) states:

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

3. At the trial, appellant testified he shouted, "Look out, Howie", as the deceased made the motion. However, in appellant's oral confession, which was admitted into evidence, appellant stated that he said, "Get him", to Robinson after his own gun misfired.

recoup the coins. His entire conduct was calculated and remorseless, and the jury was justified in finding that this appellant will always constitute a continuing threat to society.[4]

■ Appellant's third ground of error also relates to the punishment hearing. Appellant first charges that the court erred in failing to submit his requested charges five and seven, which were intended as substitutes for Special Issues one and three of Article 37.071(b), supra, and second he claims that the evidence is insufficient to support the jury's finding of "yes" to Special Issues Nos. 1 and 3. This is clearly a multifarious ground of error and presents nothing for review.

■ However, we will briefly discuss the contention. In substance, appellant contends, without citation of authority, that Special Issues 1 and 3 are not applicable to one charged as a principal.[5] To agree with such contention would require that we ignore this Court's interpretation of the law of principals. Earlier in the opinion we declined to do so. Further, regarding the sufficiency of the evidence, the facts set forth under ground of error two are sufficient to support the jury's affirmative responses to Special Issues Nos. 1 and 3.

■ By ground of error four, appellant claims that the indictment is fatally defective because it fails to set out the elements of robbery in his indictment charging him with murder during the commission or attempted commission of robbery. Appellant contends that the indictment should allege the elements of robbery as well as murder.

Appellant's contention was answered adversely to him in *Jones v. State,* 53 Tex. Cr.R. 131, 110 S.W. 741, and *Oates v. State,* 48 Tex.Cr.R. 131, 86 S.W. 769, which hold that an indictment need not allege the constituent elements of a felony which the defendant was committing or attempting to commit at the time of the homicide charged in the indictment. See also *Gonzales v. State,* Tex.Cr.App., 517 S.W.2d 785; *Watts v. State,* Tex.Cr.App., 516 S.W.2d 414; *Earl v. State,* Tex.Cr.App., 514 S.W.2d 273, which hold that under the new code an indictment charging one offense during the commission of another crime need not allege the elements of the latter offense.

■ In grounds of error five and six, appellant attacks the constitutionality of Article 1257, supra, Sec. 19.03, V.T.C.A., Penal Code, and Article 37.071, supra. His contentions have been answered adversely to him in our recent opinion in *Jurek v. State,* Tex.Cr.App., 522 S.W.2d 934.

■ Appellant also contends that the caption of the death penalty statute under which he was tried, Article 1257, supra, fails to meet the requirements of Article III, Sec. 35, of the Texas Constitution in that it "embraces more than one subject, and is therefore insufficient to apprise the Legislature and the public of the full effect of the amendment."

Appellant's brief contains no citation of authority, and no discussion of his contention. Without further elaboration from him, we are unable to meet appellant's contention other than to observe that the caption covers the one subject legislated upon by the Act.

■ Appellant's seventh and ninth grounds of error will be discussed together. In the seventh ground of error appellant asserts that Article 1257(d), V.A.P.C., imposes "an unrealistic, repressive oath on

---

4. Appellant has attached to his brief what he denominates as a "Supplemental Transcript". This "transcript" contains the testimony of one of the State's witnesses at another and later trial, which appellant claims is materially different from that testimony given at his trial. The "transcript" is not properly a part of this record on appeal and cannot be considered by this Court. *Booth v. State,* Tex.Cr.App., 499 S.W.2d 129.

5. Article 37.071(b)(1) and (3), supra, state:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

prospective jurors and limits inquiry into their qualifications" required by *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. As we construe the statute it neither imposes a repressive oath on prospective jurors nor prohibits the inquiry which appellant claims he was denied. However, the appellant does not call to our attention any portion of the record where he was denied an opportunity to make such inquiry.

Appellant seems to be laboring under the impression that Article 1257(d), supra, in itself constitutes an oath to be administered in its own terms to each venireperson. Our interpretation of this statute is that it merely provides one criteria by which each venireperson is to be qualified. This is in agreement with that portion of *Witherspoon* set forth at 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776, footnote 21.[6]

■ In his ninth ground of error appellant says that the trial court "erroneously allowed the exclusion for cause of veniremen who had scruples concerning capital punishment." Upon rebriefing on orders of this Court, appellant now points out certain named members of the venire who he claims were inadequately examined and excused because of their views as to the death penalty. We have now examined the voir dire to which appellant points and find that they were tested in accordance with the terms of Article 1257(d), supra, and were additionally questioned so as to substantially comply with the mandate of footnote 21 of *Witherspoon.*[7] This venire qualification

can be distinguished from *Hovila v. State,* Tex.Cr.App., 532 S.W.2d 292 (Decided April 30, 1975), where the voir dire complied neither with *Witherspoon* nor with the mandate of Article 1257(d), supra. The questions propounded by the court to each jury panel were leveled solely as to the answers to the issues set forth in Article 37.071(d), supra, and not to the ability of the venirepersons to pass upon the guilt or innocence of the accused or "any issue of fact."

■ Ground of error eight charges the State used its peremptory challenges to strike four members of the venire who were black, thereby excluding members from the jury who were the same race as appellant.

Appellant's contention was answered adversely to him in *Hill v. State,* Tex.Cr.App., 487 S.W.2d 64, in which we adhered, as we do here, to our earlier holding in *Ridley v. State,* Tex.Cr.App., 475 S.W.2d 769, wherein we stated:

"We hold that no systematic exclusion has been shown. To hold otherwise would in effect be abolishing our peremptory challenge practice which has always been a part of our system to help an accused as well as the State obtain an impartial jury and a fair trial."

See also *Brown v. State,* Tex.Cr.App., 476 S.W.2d 699; *Hardin v. State,* 475 S.W.2d 255. Cf. *Jaquez v. State,* Tex.Cr.App., 473 S.W.2d 530. See also *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866.

■ Grounds 10 and 11 relate to the admission at the guilt-innocence stage of

---

6. "We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.* Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the conviction, as opposed to the *sentence,* in this or any other case."

7. With the exception of venirepersons Baker and Switch, all those mentioned in appellant's brief were tested, as we construe their examination, in accordance with the terms of Article 1257(d), supra.

Baker, a "gospel minister", in the course of his examination, stated:

"Q Are you saying your religion would prevent you from personally being on a death penalty case?

A Yeah."

Switch, an employee of a hospital, answered, "Death is something that I would not be able to condemn anybody to." He stated that this was because of his profession.

the trial of evidence of extraneous offenses both prior and subsequent to the date charged in the indictment. Both consisted of proof that appellant possessed a pistol in a public place and nothing more. Proof of the possession of a pistol by appellant prior to the robbery might be justified as in rebuttal to his testimony that he "didn't own a pistol", but the testimony as to the subsequent possession should not have been admitted.

It is this continued persistence in making borderline error that causes certain counties in this State to have a much worse reversible error record than others. But regardless of this, we must determine if this proof, in the light of the case as a whole, constitutes reversible error.

The proof is clear, and appellant fully admits in his testimony that he went armed into a convenience store with his companion, who was also armed, and that in the course of the ensuing robbery, the store attendant was shot and killed.

We conclude as we did in *Mabry v. State,* Tex.Cr.App., 492 S.W.2d 951, that the evidence of appellant's possession of a pistol without more was not of sufficient gravity to have influenced a jury who had heard the testimony of this brutal robbery-murder. See also *McNeal v. State,* Tex.Cr.App., 499 S.W.2d 173, and 13B Tex.Dig., Criminal Law ■■■■

■■ Appellant next contends that the trial court erred in submitting murder with malice in his charge to the jury at the guilt-innocence phase of the trial. Citing *Brazile v. State,* Tex.Cr.App., 497 S.W.2d 302, appellant claims the type of murder, whether during the commission of a robbery or with malice, relates only to the question of punishment, and was therefore erroneously submitted to the jury at the trial on the merits. No error is shown. *Lee v. State,* Tex.Cr.App., 503 S.W.2d 244; *Caraway v. State,* Tex.Cr.App., 489 S.W.2d 106.

In a capital case, it was incumbent upon the court to submit the issue of murder with malice in his charge on the guilt-inno-cence phase of the trial in order to avoid a trifurcated trial. Any other submission would have required a finding of guilt as to murder at the guilt-innocence stage of the trial, a finding of guilt of murder with malice at a second stage of the trial, and a finding that the offense was committed under the circumstances outlined in Article 37.071, supra, at a third stage of the trial. This was not contemplated by the Legislature.

Appellant's last ground of error relates to seven separate instances in which the trial court overruled appellant's motion for mistrial following certain questions and remarks made during the trial. Appellant contends that the net cumulative effect of these incidences, viewed in light of the severity of the punishment, requires reversal.

The seven incidences were:

■■ 1. It is appellant's contention, if we understand the same, that the witness Mitchell was guilty of perjury. We are not told exactly where the alleged perjury occurred, in what respect such testimony was false, or how it was called to the trial court's attention. We are at a loss to answer this assertion. This contention does not meet the requirements of Article 40.09, Sec. 9, V.A.C.C.P., and presents nothing for review. *Hurd v. State,* Tex.Cr.App., 513 S.W.2d 936; *Peterson v. State,* Tex.Cr.App., 508 S.W.2d 844.

■■ 2. Appellant asserts that the court erred in permitting Dr. Grigson, a psychiatrist, to testify when his name had not been listed in compliance with appellant's motion in limine to list all of the State's witnesses *to be used in its case in chief.* We have concluded that since Dr. Grigson was called in rebuttal, he did not come within the purview of appellant's motion. Since Dr. Grigson had examined appellant prior to trial, his appearance as a witness in rebuttal did not surprise appellant.

■■ 3. The appellant further asserts that the prosecution violated the court's order on his motion in limine referring to the appellant as "Dirty Red". The record reflects at the point indicated by the

appellant's brief that the witness' answer which contained the name was unresponsive and upon objection the same was sustained and the court on its own motion instructed the jury to disregard the answer. A prompt instruction to disregard is usually sufficient to cure error. No reversible error is reflected. *Pearson v. State,* Tex.Cr. App., 500 S.W.2d 829; *Terry v. State,* Tex. Cr.App., 481 S.W.2d 870.

4. Appellant asserts that the prosecutor referred to an extraneous offense when he propounded to the appellant the question: "You've had plenty of experience with lawyers, haven't you?" The objection "as being an improper remark" was sustained and the jury was instructed not to consider the question. The record reflects that the prosecutor's question came just after the appellant testified that he had pled guilty to the charge of possession of marihuana upon the advice of his counsel. In view of the prompt action of the court, no error is shown. See *Pearson v. State,* supra.

5. Appellant next complains of the State's admonition, "Don't answer until your lawyer has an opportunity to object." The objection was that the remark was improper, which the court sustained by stating, "No comment, please", and then instructed the jury not to consider the statement. No error is shown.

6. Appellant complains of a question by the State but does not cite the portion of the record where it was asked. Nothing is presented for review. *Peterson v. State,* supra.

7. The last contention is that error is reflected by a question propounded to the appellant regarding the gun he had in his possession at the time the offense occurred. The question was, "If it was somebody else's, you know, you would have stolen it." The objection to the question was sustained and the jury was instructed not to consider the same. *Rodgers v. State,* Tex.Cr.App., 486 S.W.2d 794.

We overrule appellant's contention that the cumulative effect of the occurrences constituted reversible error.

Finding no reversible error, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

The opinion concurring in part and dissenting in part on original submission, by the writer, is withdrawn.

The questions that concerned the writer regarding the constitutionality of Art. 37.-071(b)(2), V.A.C.C.P., have been laid to rest by the Supreme Court of the United States in *Jurek v. Texas,* —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929, 19 Cr.L. 3282. See also *Gregg v. Georgia,* —— U.S. ——, 96 S.Ct. 2909, 49 L.Ed.2d 859, 19 Cr.L. 3250, and *Proffitt v. Florida,* —— U.S. ——, 96 S.Ct. 2960, 49 L.Ed.2d 913, 19 Cr.L. 3276.

The motion for rehearing is overruled.

ROBERTS, Judge (concurring).

My dissenting opinion on original submission is withdrawn. The Supreme Court of the United States has resolved the questions I had about the constitutionality of Art. 37.071(b)(2), Vernon's Ann.C.C.P., in *Jurek v. Texas,* —— U.S. ——, 96 S.Ct. 2950, 48 L.Ed.2d ——, 19 Cr.L. 3282 (1976). See also *Gregg v. Georgia,* —— U.S. ——, 96 S.Ct. 2950, 48 L.Ed.2d ——, 19 Cr.L. 3250 (1976), and *Proffitt v. Florida,* —— U.S. ——, 96 S.Ct. 2960, 48 L.Ed.2d ——, 19 Cr.L. 3276 (1976).

I agree that the motion for rehearing should be overruled.