CHARLES JONES v. THE STATE.

No. 4271.    Decided March 11, 1908.

**1.—Murder—Indictment—Definition of Burglary in Perpetration of Murder.**

Where an indictment in the usual form charges murder, it charges all kinds or species of murder that could be committed by the means alleged, and if the party used the means and committed the homicide in the perpetration or in the attempt at the perpetration of burglary, etc., all this may be proved without specific allegation, and a conviction be had therefor under such indictment. Following Tooney v. State, 5 Texas Crim. App., 163.

**2.—Same—Express Malice.**

Where an indictment charged that the killing was with express malice, a conviction under it will not be disturbed because the proof showed not only such malice but also that the killing was done in the perpetration of burglary. Following Mitchell v. State, 1 Texas Crim. App., 193 and other cases.

**3.—Same—Statutes Construed—Indictment.**

Under article 711, Penal Code, alleging the murder was committed in the perpetration or attempt at the perpetration of burglary, etc., such murder is ipso facto murder in the first degree; it is characterized by malice aforethought as much as is murder committed upon express malice; and hence, since without malice aforethought no homicide can be murder, in all such cases it is essential

that the indictment should allege that the killing was upon malice aforethought. Following Pharr v. State, 7 Texas Crim. App., 472 and other cases.

**4.—Same—Case Stated.**

Where the defendant was indicted for murder in two counts and the indictment charged murder in the second count in the perpetration of burglary, etc.; that defendant set fire to the house alleged to have been burglarized, etc., that the deceased died from injuries inflicted upon him by said fire, etc., and alleged express malice, it was not necessary to set out in terms, the constituent elements of burglary and of arson, and the indictment was sufficient under article 711, Penal Code, and sufficiently advised defendant of the nature and character of the charge against him.

**5.—Same—Charge of Court—Arson and Burglary, Definition of.**

Where upon trial for murder committed in the perpetration of burglary, the court substantially charged, according to the indictment and the evidence, that if defendant burglariously entered the said house with the fraudulent intent to commit theft, and acting with implied malice aforethought set fire to said house by reason of which deceased lost his life, etc. (the defendant having been acquitted of murder in the first degree on a previous trial), the same was a sufficient definition of burglary and arson.

**6.—Same—Definition of Express Malice—Charge of Court.**

Where defendant had been previously acquitted of murder in the first degree, a charge on express malice, even if erronous, could furnish him with no just cause of complaint.

**7.—Same—Charge of Court—Unintentional Homicide.**

Where upon trial for murder the evidence showed that the entry and burglary of the house was premeditated, and there was nothing to show that the burning of the house was accidental, the issue of unintentional homicide was not raised, and no charge thereon was necessary.

**8.—Same—Charge of Court—Alibi.**

Where the defense of alibi arises in a case and the court submits the issue of defendant's guilt and charges the doctrine of reasonable doubt, this includes of necessity a finding by the jury as to whether the defendant was present and committed the crime; and the case should not be reversed for the failure of the court to charge on alibi, unless the action of the court was excepted to at the time, and a full and more particular submission of the issue of alibi was sought. Overruling Allen v. State, 45 Texas Crim. Rep., 468; 8 Texas Ct. Rep., 322; Wilcher v. State, 47 Texas Crim. Rep., 301; 11 Texas Ct. Rep., 520; Bird v. State, 48 Texas Crim. Rep., 188; 13 Texas Ct. Rep., 295.

**9.—Same—Statutes Construed—Remedial Statute—Judicial Construction.**

Article 723, Code Criminal Procedure, is a remedial statute, designed to prevent reversals for mere technical errors, and does not change the rule as to the court's charge on the law of alibi as adjudicated in the decisions of the courts before the passage of said article, and does not institute a more rigorous or technical rule than existed aforetime.

**10.—Same—Case Stated.**

Where upon trial for murder, the evidence raised the issue of alibi, and the court charged not only the doctrine of reasonable doubt, but that if defendant did not break into the alleged burglarized house and set fire thereto he would not be guilty of the offense charged, and in case of a reasonable doubt thereof entitled to an acquittal, and there was no charge requested by the defense submitting the issue of alibi, and no exceptions reserved to the court's charge at the time. Held that the failure to charge on alibi was not calculated to injure the defendant, and there was no error.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The father of the deceased testified that he occupied a two-story building, using the lower story for a grocery store, and the upper story as his residence; that he was occupying the upper story the night of the fire, and that he, his wife and two of his children were barely saved from burning, and that they had to make their escape by means of ladders, which neighbors brought to their rescue; that three of his children, however, including Philip Preager, were burned to death in the building; that the dead body of the latter was fully identified the next morning. This witness further testified that all the doors and windows of said house were closed and locked at about 10 o'clock of said night; that the burglar cut a hole near the lock of the front door, but a roller prevented him from opening the door; that then he cut another hole in the lower part of the door and then unfastened the said iron roller and opened the door; that neither the defendant nor anybody else had his consent to enter the store after he had closed it for the night; that his store contained groceries and other goods, wares and merchandise; that he had about fifty gallons of oil and other explosives in the store; that the fire spread very quickly and kept him from going down the stairway; that the defendant lived next door to the store and that he knew him well; that the defendant had been in the store about 5 o'clock on the evening of the night of the fire; that the relations between witness and defendant were friendly; that there was no insurance on the goods, but there was on the household furniture; that when his wife awakened him she said, "Charley walked out of the room just now," this was about 4 o'clock in the morning; witness knew that his wife meant the defendant.

The mother of the deceased testified that she saw the defendant in their bedroom about 4 o'clock in the morning on the day the house was burned; that she knew defendant, and had seen him often; that he came up to her bed and put his hand on her person; that this awakened her; that she saw him, and then he turned and walked out of the room, and she heard him strike a match; that she then awakened her husband and told him that the defendant came up to her bed, and that he had just walked out of the room; that when her husband got up and took hold of the lamp that they kept burning all night, and went out on the front gallery, she heard some one call fire; that she jumped out of bed, and it seemed like the whole house was on fire; that they could not escape by the door, and that she took her little babe and went out on the gallery, and told her husband to go and get the children; that some one took her down, but that three of her children were burned to death, the deceased being one of them; that she was positive that she saw the defendant in the room when she was awakened that morning; that she knew him well, as he lived next door, and that she saw him in the store about 5 o'clock in the evening before the fire, in company with some one whom she did not know; that the next time she saw him was when he was in her bedroom; that the lamp was kept burning all night on account of the baby, and was lit that night; that it was the second day of July, 1907, was very warm weather and that they kept no

fire in the house; that the cash drawer was found in the bath room, away from the store; that this cash drawer was kept in the store during the day, and at night was carried upstairs and put behind the pillow; that this was done on the night of the fire; that no money was taken (another witness testified it was empty); that defendant had on a red shirt and a light suit of clothes; that he was standing right by her bed when she saw him, and that when he went away he turned and looked at her as he walked off, but did not say anything; that when she opened her eyes his back was to her, but when he walked off a piece he turned around and looked right square at her; that she saw him when he walked out, and when he had gone out of the room she told her husband that defendant had just gone out of their room.

A policeman testified that on the morning of the second of July, 1907, he heard about the fire about half past 5 o'clock in the morning, and arrived at the fire shortly after the fire alarm sounded; that he found a brace and bit at the front door of said store, and that it compared well with the holes in the door; that he saw defendant on the gallery about thirty feet away, and also saw him around the burning building; that his actions looked suspicious, and from the information received he arrested the defendant fifteen or twenty minutes after he, the officer, got to the fire; that he believed the defendant had on a clean shirt; that the witness got to the fire about half past 5 o'clock that morning.

Another State's witness testified that his attention was first called to the fire about 4 o'clock in the morning, by some one calling for help; that when he got out of his house he saw the whole store on fire; that he fired his pistol and ran down, got a ladder and ran over to the store with it and placed the ladder against the building, and assisted in getting Mrs. Preager off the gallery and down the ladder, while a neighbor assisted two of the children to get down on another ladder; that when Mrs. Preager got down the ladder she told witness that defendant was in their room; that at this time Mr. Preager had gotten down on the ground; that the only people he saw about there when he reached the building was Mr. and Mrs. Preager; that he saw the officer at the fire afterwards, and informed him about the person Mrs. Preager claimed to know had been in the house; that three children were left in the building and burned; that there was nothing in the manner of the defendant whom he saw around the fire that attracted his attention.

Another State's witness testified to the hole in the door and that she had seen the brace and bit shown her; that she was not present when they were found; that she cut out the door and preserved it as evidence.

Another State's witness testified that after the house was burned he saw where the lock had been bored out of the door; that he saw the defendant about the fire, and also saw him at his house walking up and down the gallery. The body of the deceased was identified by the witnesses.

The testimony for the defense contradicted Mrs. Preager, in that she

said that she had no idea who it was that was in the house; that she didn't know whether it was a white man or a negro; that the defendant bore a good reputation for honesty and truth, and as law-abiding, that the defendant on the morning of the fire was first seen coming out of his room on to his gallery in his night clothes; that this was after the fire started; that the defendant went back into his room and a little later came down to the fire, and remained around there until he was arrested; that defendant was awakened in his house by someone when the fire broke out, and that he jumped up and walked on his gallery in his night-clothes; that he was told to go in and dress, which he did, and he and others got his furniture out the back way of his house; that then the fire department came and defendant and others went out to the fire, when shortly after he was arrested. Defendant took the stand and testified that he was awakened by someone when the fire broke out, was told to put on his clothes after he had walked out on to the gallery, which he did and started out to the fire; that he he could not pass out the front way as the fire was so hot; that he ran back into his house and went out the back way and removed a couple of trunks and other goods out of his house through the back way; that after the fire had died down he went back into his house to go to bed, and as he was out on the gallery the officer called him and arrested him. The State in rebuttal showed that Mrs. Preager did not say that she did not know the man who was in her room, etc.; that Mr. Preager had been seen out on his front gallery up stairs with a lamp in his hand, that at this time the building was observed to be on fire, and a newsboy told him of it, etc.; that some one ran from the store who was not recognized, etc.

*Uvalde Burns,* for appellant.—On question of alibi cited cases overruled in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

RAMSEY, JUDGE.—Appellant was convicted in the Criminal District Court of Harris County of murder in the second degree, and his punishment assessed at twenty-five years confinement in the penitentiary.

Appellant was indicted for the murder of one Philip Preager. The indictment was in two counts, the second count charging, in substance, that appellant "did then and there unlawfully and fraudulently break and enter a house then and there situated, occupied and controlled by Jacob Preager and while in the perpetration, and in the attempt at the perpetration of burglary in said house, did then and there set fire to said house, and did then and there and thereby cause Philip Preager, who was then and there in said house to be burnt by means of said fire; so that the said Phillip Preager was killed by reason thereof and departed this life because of the injuries inflicted upon him by said fire, and so the grand jurors say, that the said Charles Jones did then and there with

malice aforethought kill said Phillip Preager, by said means, and that said killing and murder was committed while the said Charles Jones was so engaged as aforesaid." On conviction counsel for appellant filed a motion in arrest of judgment which, in substance, suggested to the court that the judgment of conviction rendered, should be arrested for the reason that the indictment upon which appellant was tried did not put him upon notice of what he was charged with, and that the same was too vague, uncertain and confounding in its allegations, and set forth no statutory crime. This same issue and question is also presented in appellant's motion for a new trial, and insistence is here made that the indictment is defective, in that it does not in terms set out the constituent elements of burglary and of arson. It is our judgment that this contention cannot be sustained. Article 711 of our Penal Code, is, as follows: "All murder committed by poison, starving, torture or with express malice, or committed in the perpetration or in the attempt at the perpetration of arson, rape, robbery or burglary, is murder in the first degree, and all murder not of the first degree is murder of the second degree."

This statute has been not infrequently considered and passed on by this court, and it has been held that where an indictment in the usual form charges murder, it charges all kinds or species of murder that could be committed by the means alleged, and if the party used the means and committed the homicide in the perpetration or in the attempt at the perpetration of arson, rape, robbery or burglary, all this may be proved without specific allegations and a conviction be had therefor under such indictment. See Tooney v. State, 5 Texas Crim. App., 163; Roach v. State, 8 Texas Crim. App., 478; Reyes v. State, 10 Texas Crim. App., 1; Sharpe v. State, 17 Texas Crim. App., 486; and Mendez v. State, 29 Texas Crim. App., 608. It has also been held that, although an indictment charged the killing was with express malice aforethought, a conviction under it will not be disturbed, because the proof showed not only such malice, but also that the killing was done in the perpetration of burglary or robbery. Mitchell v. State, 1 Texas Crim App., 193, and Wilkins v. State, 35 Texas Crim. Rep., 525. Under this statute, it has also been held that when the indictment charges a murder committed in the perpetration, or attempt at the perpetration of arson, rape, robbery or burglary, and though such murder is ipso facto murder in the first degree, it is characterized by malice aforethought as much as is murder committed upon express malice; and hence, since without malice aforethought no homicide can be murder, in all such cases it is essential that the indictment should allege that the killing was upon malice aforethought. Pharr v. State, 7 Texas Crim. App., 472; Johnson v. State, 30 Texas Crim. App., 419; May v. State, 33 Texas Crim. Rep., 74; King v. State, 34 Texas Crim. Rep., 228. The question here presented by appellant is, that the indictment should have defined and set out the constituent elements of burglary and arson. There is no authority supporting this contention. The statute does not so require, and it is worthy

of note, that the form laid down in White's Annotated Penal Code does no more than state that the murder was done while the person so charged was unlawfully engaged in the perpetration of arson, rape or burglary, as the case might be. It is sufficient, we think, for the indictment to have alleged, as it did in the different counts, that the murder was committed in the perpetration of arson, and in the second count, as stated, in the perpetration of burglary. In both counts of this indictment, malice aforethought was expressly alleged, and taken altogether, it sufficiently advised appellant of the nature and character of the charge against him. It is not, therefore, necessary for the pleader to define with particularity the constituent elements of the offenses of burglary or arson, or what the defendant was doing at the time he committed the murder, further than that same was committed in the perpetration of arson and burglary.

It is contended, however, by appellant in his motion for a new trial, that in any event the court should have in his charge defined arson and burglary. We think the court did this so far as was required. In that portion of the court's charge defining murder in the second degree, we find the following instruction: "But if you should find and believe from the evidence, beyond a reasonable doubt, that in Harris County, Texas, and about the 2nd day of July, A. D. 1907, that Jacob Preager, occupied and controlled a house, and that the defendant, Charles Jones, broke and entered the same, with the intent to fraudulently take corporeal personal property, of value, then and there in said house and without the consent of said Jacob Preager; and you should further find and believe from the evidence beyond a reasonable doubt, that the defendant, Charles Jones, did, acting with implied malice aforethought, as that expression has been herein defined and explained, did, set fire to said house of Jacob Preager, and that by reason of said act of said defendant, Charles Jones, in setting fire to said house said Philip Preager was burned and died therefrom, and that said act of said defendant was reasonably calculated to kill said Philip Preager, then find said defendant guilty of murder in the second degree, and assess his punishment by confinement in the State penitentiary for any length of time not less than five years." In view of the fact that appellant was charged with murder committed in the perpetration of the crime of burglary, we think the charge above quoted contained all the demands of the law, and that he (appellant) was without complaint that the court did not give a more detailed definition of the offense of burglary.

Complaint is also made of the court's charge in submitting express malice, on the ground, as claimed by counsel for appellant, that there is no evidence of express malice in the record. While we do not accede to this view, still inasmuch as appellant was acquitted of murder in the first degree, the charge on express malice, even if erroneous, could furnish him with no just cause of complaint.

Again, it is contended the court should have charged on accidental burning and unintentional homicide. We do not think this issue is

raised by the evidence. The entry and burglary of the house was shown to be premeditated, and that the cash drawer was rifled, and there is nothing, as we read the record, to even suggest that the burning of the house was accidental and not purposeful.

Again, it is contended that the court erred in not charging the jury on the subject of alibi. In this connection, it may be stated, that the testimony of appellant distinctly raises the issue of alibi, and there was direct testimony to the effect that he was not present at the house at the time when the fire was discovered, and it is strongly asserted and suggested by this testimony that he (appellant) did not set fire to the house. On the other hand, the testimony of Mrs. Preager unequivocally and distinctly identifies him (appellant) as being in her room at the immediate time when the house was discovered to be on fire. While contradicted somewhat by one witness on this issue, her testimony of identification is positive and complete. In this state of the record, the court gave the following charges: "If defendant did not break the house of the said Jacob Preager and set fire thereto, he would not be guilty of the offense charged, and if you so find, or if you have a reasonable doubt thereof, find him not guilty." Again, the court charged: "The defendant is presumed to be innocent until his guilt is established by legal evidence to your satisfaction beyond a reasonable doubt and if you have a reasonable doubt of the defendant's guilt, find him not guilty." It is well settled in this State by repeated decisions of this court that the defense of alibi is sufficiently embraced in a general charge to the effect that a defendant is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt where no additional instruction is requested more explicitly amplifying the law upon that subject. Oxford v. State, 32 Texas Crim. Rep., 272; Davis v. State, 14 Texas Crim. App., 645; Ninnon v. State, 17 Texas Crim. App., 650; McAfee v. State, 17 Texas Crim. App., 131; Ayers v. State, 21 Texas Crim. App., 399; Hunnicutt v. State, 18 Texas Crim. App., 498, and Quintana v. State, 29 Texas Crim. App., 401. In this case the court not only gave the usual and proper charge on the subject of reasonable doubt, but in express terms instructed the jury that, if appellant did not break the house and set fire to it, or if they had a reasonable doubt as to whether he did so, they would find him not guilty. This was all that the court was required to do.

We have gone carefully over the facts of the case, and think same clearly point to defendant as being guilty of the murder of Philip Preager, and believing there was no error committed on the trial of the case, the judgment of the court below is accordingly affirmed.

*Affirmed.*

### ON REHEARING.

#### May 20, 1908.

RAMSEY, JUDGE.—This case was by this court affirmed at the recent Dallas term, and is now before us on motion for rehearing.

It is earnestly insisted by counsel for appellant that the court erred in holding that the trial court was not in error in failing to grant a motion for a new trial on the ground that the defense of alibi was not submitted in express terms to the jury, and in support of his motion we are referred to the cases of Wilcher v. State, 47 Texas Crim. Rep., 301; 11 Texas Ct. Rep., 520; Allen v. State, 45 Texas Crim. Rep., 468; 8 Texas Ct. Rep., 322; and Bird v. State, 48 Texas Crim. Rep., 188; 13 Texas Ct. Rep., 295. In the original opinion of this court in affirming the case, it was stated, "It is well settled in this State by repeated decisions of this court that the defense of alibi is sufficiently embraced in a general charge to the effect that a defendant is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt where no additional instruction is requested more explicitly amplifying the law upon that subject." In this case, as stated in the original opinion, not only did the court below charge the jury the doctrine of reasonable doubt but gave also the following charge: "If defendant did not break the house of the said Jacob Preager and set fire thereto he would not be guilty of the offense charged, and if you so find or if you have a reasonable doubt thereof find him not guilty." In the case of Oxford v. State, 32 Texas Crim. Rep., 272, this court, speaking through Judge Simkins, said: "The court did not err in failing to charge on alibi. It was not an issue in the case, and no charge was requested on such a defense, nor was there an exception to the failure to charge thereon. It is settled in this court, that such a defense is sufficiently embraced in the general charge that a defendant is presumed by law to be innocent until his guilt is established by competent evidence, beyond a reasonable doubt, and if such a charge is desired, it must be requested." In the case of Quintana v. State, 29 Texas Crim. App., 401, Judge Davidson of this court, says: "But the omission of the trial court to charge with reference to alibi is not such error as will, ordinarily, cause a reversal of the conviction, unless the charge be excepted to because of such omission, or unless special instruction upon that subject be requested and refused." In the case of Ayres v. State, 21 Texas Crim. App., 399, the court say: "Unless requested to do so, the trial judge is not required to charge specially upon the defense of alibi. It is ordinarily a defense sufficiently embraced in the general charge that a defendant is by law presumed innocent until his guilt is established by competent evidence beyond a reasonable doubt. In The State v. Reed, 62 Iowa, 40, it is held that alibi is not a defense within the accurate meaning of that word, but a mere fact shown in rebuttal of the State's evidence, and it does not, therefore, demand a specific instruction from the court." In the case of Davis v. State, 14 Texas Crim. App., 645, Judge Willson, speaking for the court, says: "Another objection made to the charge is, that it fails to instruct the jury as to the rules of law applicable to the defense of alibi. We are not aware of any statute or decision which requires the trial judge to instruct the jury specifically upon this defense when not requested to do so. It is sufficiently embraced, we think, in the general

charge, that the defendant is presumed by law to be innocent until his guilt is established by competent evidence beyond a reasonable doubt." Again, in the case of Rider v. State, 26 Texas Crim. App., 324, it is stated: "If an alibi had been the only defense, then, perhaps, the court should have charged specifically with reference to it. Where it is not the sole defense, it is not necessary that the court should charge specially upon it, unless requested to do so, and the omission in the charge upon the subject in such a case will not be error, unless the charge is specifically excepted to upon that ground." It will be observed that the cases cited above uniformly lay down the rule that it is not reversible error for the trial court to fail to specifically submit the issue of alibi in the absence of a requested instruction so to do, or in the absence of an exception made at the time of the court's failure so to do. In this case, not only did the court give an instruction upon the subject of reasonable doubt, but, as stated above, in express terms, told the jury that if appellant did not break the house and set fire to it, or if they had a reasonable doubt that he did not so do, they would find him not guilty.

Appellant however insists that since the enactment of article 723, of the Code of Criminal Procedure, the rule laid down herein is no longer the law of this State. Article 723, approved March 12, 1897, is as follows: "Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, which error shall be excepted to at the time of the trial, or on motion for a new trial." The article as it theretofore stood was as follows: "Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall be reversed; provided, the error is excepted to at the time of the trial." The cases cited in the original opinion were delivered before the adoption of article 723 as it now stands. That article was in the nature of remedial legislation, and its purpose was to prevent a reversal of criminal cases for mere matters of form where there had been no invasion of any substantial right of a defendant, and to require, in matters of procedure, that counsel for defendants should give the court below an opportunity to correct any error into which by inadvertence or otherwise they had fallen. It certainly was never intended that article 723, of the Code of Criminal Procedure, would institute a more rigorous or technical rule than had existed aforetime, and we cannot see any reason why, in respect to the matter complained of, a case should be reversed that would not have been the subject of reversal under the law as it stood before the adoption of the article in question. It must be confessed that in tendency, if not in effect, the decisions cited by appellant antagonize and are out of harmony with the decisions herein rendered, and with the earlier decisions of this court. In the case of Allen v. State, 45 Texas Crim. Rep., 468; 8 Texas Ct. Rep., 322, the case was

reversed because the court failed to charge on alibi. In that case it appears that counsel for appellant claimed that they excepted to the failure of the court to so charge at the time, and in his motion for a new trial refers to bill of exceptions taken at the time. The opinion discloses the fact that there was an affidavit filed in the case by counsel for appellant to the effect, in substance, that he presented to the court his bills of exception numbers 1 and 2, which raised the question of the failure of the court to charge on alibi, to the judge during the term; that the judge, without the consent of appellant, took said bills of exception and kept them until after court adjourned, and then carried them with him to Knox County, and sometime thereafter returned them to the clerk, and they were filed by him on July 21st. However, it appears that the court certified that he refused said bills because exception was not made and the attention of the court was not called to the objection until after the jury returned their verdict. In this state of the case, Judge Henderson says: "The question presented is, does this procedure sufficiently raise the question as to the failure of the judge to give a charge on alibi? We hold that it does. Unquestionably when appellant filed his motion for new trial he referred to his two bills of exception numbers 1 and 2, which set up the error of the court in failing to charge on alibi. These bills were in the hands of the judge at the time, and appellant evidently believed, and had a right to believe, that they would be filed during the term in some shape, either with corrections or explanations by the judge. The statement of the judge that he refused them, giving his reasons that appellant did not call his attention to the failure of the court to charge on alibi, until after the jury had returned their verdict, was really tantamount to an explanation by the judge that, in his opinion, the exceptions came too late. If it be conceded that the exceptions did come too late, still the motion for new trial was presented in time and referred to said bills, which called the court's attention to the failure of the court to charge the law, but which, in the opinion of the court, came too late for that purpose. We hold that we can look to the refused bills in order to determine the character of appellant's objections to the court's charge, as presented in his motion for new trial. It is accordingly the opinion of the court that the exception in the motion for new trial to the court's charge, thus explained, sufficiently raises the question of failure on the part of the court to charge on the question of alibi; and for this failure the judgment is reversed and the cause remanded." It is, therefore, we think, obvious that in effect these exceptions, though refused, were treated for all practical purposes as having called the attention of the court to his failure to charge on the subject of alibi. In the case of Wilcher v. State, 47 Texas Crim. Rep., 301; 11 Texas Ct. Rep., 520, it was held by this court that a failure to charge upon the issue of alibi when raised by the testimony is error and ground of reversal under article 723, and it is stated: "Before the enactment of article 723, Code of Criminal Procedure, it was held that it was necessary to request a charge or except to the court's failure to

charge on alibi by bill of exceptions," and reference is made to the case of Quintàna v. State, 29 Texas Crim. App., 401.   Again, in the case of Bird v. State, 48 Texas Crim. Rep., 188; 13 Texas Ct. Rep., 295, it is said that the court's charge upon another trial should give the law with reference to alibi fully.   That the cases last cited, and possibly others, do conflict with the earlier rule referred to in the original opinion, is obvious by comparison, and will be readily seen from the statement we have made.   Neither of these cases cited above, however, except the Wilcher case, refer to any of the older decisions of the court, nor do they in terms overrule them.   We believe, as stated, in the original opinion, that the true and correct doctrine is that where the defense of alibi arises in a case and the court submits the issue of defendant's guilt and charges the doctrine of reasonable doubt, that this includes of necessity a finding by the jury on the issue as to whether the defendant was present and in fact committed the crime charged, and that a case ought not to be reversed for the failure of the court to particularly charge on alibi, unless the action of the court was excepted to at the time, and a full and more particular submission of the issue of alibi sought.   This was the rule in Texas time out of mind, and so laid down repeatedly in an unbroken line of decisions until the case of Allen v. State, 45 Texas Crim. Rep., 468; 8 Texas Ct. Rep., 322.   The only reason given in any of the cases why a different rule should be instituted is based upon construction and consideration of article 723, of the Code of Criminal Procedure.   As stated, that was a remedial statute designed to prevent reversals for mere technical errors, and to hold, as seems to have been done in the cases last cited, that a reversal must follow for the failure of the court to charge on alibi, solely because the issue was raised on motion for a new trial is, in effect, to nullify the statute and make our last statute worse than the first.   This we do not believe was the intention of the Legislature, nor do we believe that this construction is correct. So believing, we hereby in express terms overrule the cases of Allen v. State, 45 Texas Crim. Rep., 468; 8 Texas Ct. Rep., 322; Wilcher v. State, 47 Texas Crim. Rep., 301; 11 Texas Ct. Rep., 520; and Bird v. State, 48 Texas Crim. Rep., 188; 13 Texas Ct. Rep., 295, cited above, and reaffirm and redeclare the old rule which so long existed in this State that a case will not be reversed for the mere failure of the court to charge on the subject of alibi, unless a special charge submitting this issue is requested or an exception reserved at the time.   We are the more constrained to do so in this case for the reason that the charge of the court herein in effect submitted the doctrine and issue of alibi, and that same was reasonably included in the charge herein copied.   In any event the failure of the court to charge on the law of alibi was not calculated to injure the appellant.

The motion for rehearing is, therefore, overruled.

*Overruled.*