### JESUS HERNANDEZ v. THE STATE.

#### No. 1421. Decided November 29, 1911.

**1.—Occupation—Selling Liquor—Local Option—Charge of Court—Alibi.**

Where, upon trial of selling intoxicating liquors as an occupation or business in local option territory, the evidence did not raise the issue of an alibi, there was no error in the court's failure to charge thereon.

**2.—Same—Rule Stated as to Charging on Alibi.**

Where, upon trial of selling intoxicating liquors as a business in local option territory, the defendant did not request a special charge on the defense of alibi, and the court charged upon the presumption of innocence and reasonable doubt, there was no error, even if the evidence raised the issue of an alibi. Following Jones v. State, 53 Texas Crim. Rep., 131, and other cases.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory the evidence sustained the conviction, there was no error.

**4.—Same—Definition of Occupation—Charge of Court.**

Where the court in his charge correctly defined the term "occupation" as applied to a violation of the law in pursuing the occupation of selling intoxicating liquors in local option territory, according to approved precedent, there was no error. Following Fitch v. State, 58 Texas Crim. Rep., 366, and other cases. Distinguishing Cohen v. State, 53 Texas Crim. Rep., 422.

Appeal from the District Court of Reeves. Tried below before the Hon. S. J. Isaacks.

Appeal from a conviction of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Rass & Hubbard,* for appellant.—On the question of alibi: Ballentine v. State, 52 Texas Crim. Rep., 369, 107 S. W. Rep., 546.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On May 19, 1910, the grand jury of Reeves County indicted the appellant for unlawfully engaging in and pursuing the occupation and business of selling intoxicating liquors in justice precinct No. 1, of Reeves County, Texas, after prohibition was properly carried by a vote of the·people and the prohibition law declared in force in said justice precinct. The indictment charged that he did this on or about November 1, 1909, and that on or about the same date he made a sale of intoxicating liquors to Lucindy Barkley and another to Becky Goosby, and other sales to persons to the grand jury unknown, and that during the months of October, November, and December, 1909, he made more than two sales of intoxicating liquors in violation of the prohibition law which was then in full force and effect in said precinct. The case was tried on May 11, 1911, the appellant found guilty and his punishment assessed at two years in the penitentiary.

On the trial it was admitted that prohibition was in effect in said justice precinct in Reeves County, Texas, long prior to the filing of the indictment, at the time of the trial and at all times between said dates, and that Pecos was in said justice precinct. No question is made about prohibition being in effect in said justice precinct at, since and prior to the time appellant was charged with committing the offense.

The State introduced Lucindy Barkley, who testified: That she knew the defendant and knew him in the summer and fall of 1909, telling where he lived in Pecos. "I had occasion to buy whisky from the defendant after July 9, 1909. I bought the most I ever did buy from him right straight along, before then, but after this time— and up to the time I stopped—I did not buy so awful much from him, because I did not have as much money to throw away, I guess. I do not remember the date, but I bought some in July and bought some in—from then on until about October; I bought my last along about then, I think. Sometimes he would bring it to my house and sometimes I would go for it. I paid him different prices, $1.50 and $2. . . . I bought some in August, not very much. I bought a right smart—pretty regular in September and October." She then testified that she knew defendant had left Pecos, in the fall, she thought. Did not remember what month he came back, though it was cool. "I don't really know how many times I bought whisky from him in October. It has been so long I disremember,·but it was more than twice. I appeared before the grand jury; that was November

after the October I bought it from him, the 1st of November, 1909.
. . . I said I bought the last whisky from him before November, in
October, and that I bought more than twice. I bought in July until
it was gone, but I do not remember no date."

On cross-examination she testified: "I do not remember just how
many bottles of whisky I have bought from him from July on; it
has been so long. I do not know, but I think it was under ten bot-
tles. Do not know how many I bought in July; never kept no count
of them everyone. I was drinking all that whisky. . . . Don't
know how many bottles I bought in August, was buying so much
and drinking so much I never kept count of it. I did buy some in
August; don't know how many bottles. It has been so long, I done
forgot. I remember he went away endurin' of that time, somewhere
along before—well, it was before court or the grand jury or Novem-
ber, and he come back before it ever commenced, but it has been so
long I done forgot it. . . . I stated that I bought whisky in
July, August and September and October. . . ."

On redirect examination she testified: "I bought whisky during
October, the month preceding the time I went before the grand jury;
more than once—more than twice. Bought it from Jesus Hernandez.
That was in Reeves County, State of Texas, Pecos City."

On recross-examination she testified: "I do not know the date
when I bought whisky from him from July to October, but I can
remember as near as I can remember than at that time; I bought in
October before court; along about the middle of October, somewhere
along in there. I bought somewhere about—I know it was the mid-
dle—I know it was not the first or last. I bought in September; about
the middle, somewhere along in there; I bought in September, too,
and know I bought some about the first of August. I think I bought
all along in July. . . . When I first commenced buying I just
kept on buying until he quit selling it. . . . I think he was gone
for awhile somewhere along about August. . . . I was buying all
along endurin' the time I started until he quit, until the time he
left. . . . If I said he was gone in August—it must have been
true if I said so. I know I bought in July, something happened, I
know I bought in July. In the month of August—it was somewhere
about August when I went after some more and he was gone."

On redirect examination she testified: "I bought whisky from Jesus
Hernandez two or three times in October, 1909; I think it was in
October. I bought two or three times in October."

On recross she testified: "I bought somewhere about the second
week of October. I was down at Uncle Joe's place. The next time
was about the middle. I bought a bottle like today and another like
tomorrow night and didn't buy any more. I said about the second
week, and then the next time that I remember of, buying two bottles
like today and one tomorrow night; that is the reason I said two
or three times; it might have been more. . . . The whisky I

bought in October was about the middle, the second week; that was the last I bought."

Becky Goosby testified for the State: "I know the defendant; I knew him when he was brought back here. I bought some whisky before ever he was arrested. I bought the whisky at Pecos before Jesus (appellant) was arrested. I don't know exactly how long it has been—about a month, I reckon, I don't know; it was before he was arrested. Jesus (appellant), just brought the whisky there and I bought it. I paid him a dollar for it; he brought it there to my house. I remember buying the whisky and that is all. . . . I disremember how long before this man was arrested I bought the whisky; seems to me like it was about a month."

On cross-examination she testified: "I do not know what year it was. Can not remember what year and such things as that. I do not know how many years ago, because I never kept no track. I remember I bought the whisky, but what time it was I don't know. I paid him a dollar for the whisky. It was a flat, small bottle. I never counted the drinks in the bottle. Yes, I drank it; I like whisky. There was a woman down there at the time, but I don't remember whether she took a drink or not. I disremember whether I have been here three times. Laura was in the yard washing."

Laura Post, for the State, testified: "I know the defendant when I see him. I know Becky Goosby; I remember when Jesus (appellant) was on trial and put in jail. I was cooking for Mr. Harrison at the jail then. Yes, I saw somebody buying whisky from Jesus; it was before that time. One cold morning, I went down to help Becky wash and this gentleman came with a bottle of whisky and Becky gave him $2.00. I was there at Becky's. When he came, I came in the house from the wash place. It was cold that morning. I do not know how long that was before he was arrested; it must have been a month before he was arrested; it was not as long as five or six months; that was down at Becky's house in Santa Rosa, in Pecos, Reeves County, Texas."

On cross-examination, she testified: "If Becky says there was nobody at the house she is mistaken; I was sure there. I saw Becky give him $2. If Becky said she gave him $1, she is mistaken, for I seen two. It was a long bottle. What they call a quart bottle. If Becky says it was a small bottle, she is mistaken about that."

The State then proved by C. Brown, the sheriff of Reeves County, that he was such sheriff in January, 1910; that he knew the appellant and of his being arrested. He went after him at Amarillo, sometime between the first and 10th of January, the exact date he did not know. That was the only time he ever went away from there to get him.

The defendant then testified, himself, as follows: Direct examination: "My name is Jesus Hernandez. I live in Pecos. On or about the 1st day of January, 1909, I lived in Amarillo. I lived there at that time about three months; from Amarillo, I went to Pecos; I

went to Pecos in April; I went from Pecos in May; I went to Amarillo in May; I remained in Amarillo bout four months; I was working in camp No. 4; when I left Amarillo I went to Pecos; I went to Pecos the 17th of October. I did not sell nothing to Lucinda Barkley during the months of July, August, September and October. I did not sell any whisky during these months to Becky Goosby. I did not sell during those months to anybody in Pecos, because I have not got no saloon in this town."

Cross-examination: "I went to Amarillo the 15th of May. I did not come back here for about four months."

Redirect examination: "When I came to Pecos from Amarillo, I lived, while in Pecos, with my wife, father and mother, and sister."

Appellant's wife, Isabella Cliolo Hernandez, testified: "I am married, with Jesus Hernandez. I was married to him the 11th of January, 1909; was married in Amarillo. When Jesus was in Amarillo, when we were married, he was working in camp No. 7, Santa Fe Railroad. Jesus was in Amarillo in January, 1909. At that time, his father and mother were in Amarillo. Do not remember how long he remained in Amarillo at that time. During that year he left Amarillo and came to Pecos. He came to Pecos in April. He came back to Amarillo in May. When he came back to Amarillo, he worked in the same camp. Do not remember how long he stayed in Amarillo when he came back in May; about six months. His home is now in Amarillo. He works in the roundhouse in Amarillo now. His father and mother are now in Amarillo."

Cross-examination: "I was not at either one of the other trials of this case. Jesus went from Pecos to Amarillo the 15th of May. I remember exactly it was the 15th. Jesus was not engaged in bootlegging in Amarillo; he was working. I have been in Amarillo all the time. When we were married, we came down here. When he went back to Amarillo in May, I went with him. I did not come back to Pecos again until now. I did not come back down here with him in October."

On redirect examination: "I did not come back when Jesus was being tried the other time, because I could not come; he wanted to come down himself, with his father. His father and mother could not come this time; his father was sick; his mother did not come because she could not leave her husband alone."

The State then, in rebuttal, introduced Charley Hight, the city marshal of Pecos in May and June, 1909, who testified that he knew the defendant and saw him at different times in June, 1909, on the streets of Pecos.

Also the State introduced Tom Harrison, a deputy sheriff of Reeves County, who testified that he knew the defendant. It was shown that on May 31, 1909, a complaint was filed against appellant at Pecos and this deputy sheriff testified that he saw him in Pecos several times

after that for several days, at various times, on the streets and down at Santa Rosa, called the Mexican town in Pecos.

We have thus given in substance all of the testimony introduced on the trial of this cause. The appellant claims and assigns but three grounds for reversal. In his brief he presents but two of them.

The first he presents is, he claims that the court erred in not giving to the jury a charge on alibi, claiming that that was his sole defense. The whole of appellant's bill of exceptions on this point is as follows: "Be it remembered that on the trial of the above entitled and numbered cause, the court, in its written charge delivered to the jury, failed to charge all the law applicable to and demanded by the facts in evidence, in this: That the evidence fairly raised and called for a charge upon the issue of alibi, inasmuch as the defendant introduced testimony to prove that he was not in said Reeves County, but was in the city of Amarillo, Texas, during the period of time in which he was alleged to have been pursuing the occupation or business of selling intoxicating liquor unlawfully, in justice of the peace precinct No. 1, in said Reeves County, and because such alibi constituted the defendant's sole defense. And the defendant, at the time of said trial, excepted to said charge, because of the above mentioned defects therein, and tenders this bill of exceptions and asks that the same be signed and field as a part of the record in this cause." The only mention of this in the motion for new trial is the sixth ground thereof as follows: "Because the court, in its charge to the jury, did not instruct the jury that defendant's sole defense, to wit, an alibi, was a proper defense under the law, and did not instruct the jury upon any theory of the case from the defendant's standpoint, and the court's failure to do so was material error and calculated to injure the rights of the defendant."

The assistant attorney-general contends that this bill of exceptions is insufficient because it does not show the facts proven calling for an alibi charge.

From the testimony given above, it will be seen that the appellant, himself, testified that he removed from Amarillo back to Pecos on October 17, 1909, and that he lived at Pecos at the time of this trial. He denied that he sold anything to Lucinda Barkley during the months of July, August, September and October and denied that he sold any whisky during those months to Becky Goosby, stating "I did not sell during those months to anybody in Pecos, because I have not got no saloon in this town." The sales by appellant to said persons, Lucinda Barkley and Becky Goosby, were alleged to have been made by appellant on or about November 1, 1909. The testimony of these witnesses and Laura Post, clearly shows that the appellant did sell to them respectively in October, 1909. Lucinda Barkley shows that she bought whisky from the appellant many time in July, August and September, in addition to the two purchases in October, 1909, and that he was in Pecos on the several dates when she bought this liquor from him

in July, August and September. It is only by inference from the testimony of the appellant and his wife that they claim he was not in Pecos any time during July, August and September. As we understand their testimony, it simply is to the effect that he removed from Pecos to Amarillo about May 15, 1909, and lived in Amarillo from that time to October 17th, according to appellant's testimony, and till about the middle of October, according to Lucinda Barkley's testimony. Neither the appellant nor his wife testified that he was not back in Pecos at any time during these months. Taking their testimony alone, the jury could have believed that, notwithstanding he had moved from Pecos in May, and did not move back from Amarillo to Pecos until the middle of October, 1909, yet that he was in Pecos from time to time during the months of July, October and September. Taking the testimony as a whole, it is our opinion that a charge of alibi was not called for.

The appellant, in his brief in presenting this question, cites us only to the case of Ballentine v. State, 52 Texas Crim. Rep., 369, and the cases therein cited, and claims, as shown by his said bill, that he called the attention of the court at the time the charge was given, to the fact that the court's charge failed to charge on alibi and that he excepted thereto at the time, because of such defect. He does not claim to have requested any special charge on that subject and the record shows that he did not request any such charge. Since the decision in the Ballentine case, this court had occasion, in the case of Jones v. State, 53 Texas Crim. Rep., 131, to take up the question of a charge on alibi and to discuss and distinguish the cases on that subject. In the original opinion of this court by Judge Ramsey, in the Jones case, he said: "It is well settled in this State by repeated decisions of this court, that the defense of alibi is sufficiently embraced in a general charge to the effect that a defendant is presumed to be innocent until his guilt is established by competent evidence, beyond a reasonable doubt, where no additional intsruction is requested, more explicitly amplifying the law upon that subject. Oxford v. State, 32 Texas Crim. Rep., 272; Davis v. State, 14 Texas Crim. App., 645; Ninnon v. State, 17 Texas Crim. App., 650; McAfee v. State, 17 Texas Crim. App., 131; Ayers v. State, 21 Texas Crim. App., 399; Hunnicutt v. State, 18 Texas Crim. App., 498, and Quintana v. State, 29 Texas Crim. App., 401." The appellant in that case, on rehearing, attacked the holding of the court on that subject, just above quoted and cited many of the cases on the subject. The court then, in the opinion on rehearing by Judge Ramsey, took up and discussed the cases and the doctrine, and discussed also article 723, Code Criminal Procedure, in connection therewith. On that subject, in that case, the court said:

"Appellant, however, insists that since the enactment of article 723, of the Code of Criminal Procedure, the rule laid down herein is no longer the law of this State. Article 723, approved March 12, 1897, is as follows: 'Whenever it appears by the record in any criminal

action, upon appeal of the defendant, that any of the requirements of
the eight preceding articles have been disregarded, the judgment shall
not be reversed unless the error, appearing from the record, was cal-
culated to injure the rights of the defendant, which error shall be ex-
cepted to at the time of the trial, or on motion for a new trial.' This
article, as it theretofore stood, was as follows: 'Whenever it appears
by the record in any criminal action, upon appeal of the defendant,
that any of the requirements of the eight preceding articles have been
disregarded, the judgment shall be reversed; provided, the error is ex-
cepted to at the time of the trial.' The cases cited in the original.
opinion were delivered before the adoption of article 723, as it now
stands. That article was in the nature of remedial legislation, and its
purpose was to prevent a reversal of criminal cases for mere matters
of form, where there had been no invasion of any substantial right of
a defendant, and to require, in matters of procedure, that counsel for
defendants should give the court below an opportunity to correct any
error into which, by inadvertence or otherwise, they had fallen. It
certainly was never intended that article 723, of the Code of Criminal
Procedure, would institute a more rigorous or technical rule than had
existed aforetime, and we can not see any reason why, in respect to
the matter complained of, a case should be reversed that would not
have been the subject of reversal under the law as it stood before the
adoption of the article in question." Then specially held as follows:
"We believe, as stated, in the original opinion, that the true and cor-
rect doctrine is that where the defense of alibi arises in a case and the
court submits the issue of defendant's guilt and charges the doctrine
of reasonable doubt, that this included of necessity, a finding by the
jury on this issue as to whether the defendant was present and in fact
committed the crime charged, and that a case ought not to be reversed
for the failure of the court to particularly charge on alibi, unless the
action of the court was excepted to at the time, and a full and more
particular submission of the issue of alibi sought. This was the rule
in Texas, time out of mind, and so laid down repeatedly in an unbro-
ken line of decisions until the case of Allen v. State, 45 Texas Crim.
Rep., 468; 8 Texas Ct. Rep., 322. The only reason given in any of
the cases why a different rule should be instituted is based upon con-
struction and consideration of article 723, of the Code of Criminal
Procedure. As stated, that was a remedial statute designed to prevent
reversals for mere technical errors, and to hold, as seems to have been
done in the cases last cited, that a reversal must follow for the failure
of the court to charge on alibi, solely because the issue was raised on
motion for a new trial is, in effect, to nullify the statute and make
our last statute worse than the first. This we do not believe was the
intention of the Legislature, nor do we believe that this construction
is correct." And thereupon overruled certain cases holding a different
doctrine.

Still later, in the case of Phillips v. State, 57 Texas Crim. Rep., 161, the question came up again and Judge Davidson, for this court in that case, on the subject of a special instruction on alibi, said: "Appellant did not request special instructions. His objections to the charge are urged in motion for a new trial. In the recent case of Jones v. State, 53 Texas Crim. Rep., 131, the rule was laid down, in regard to charges on alibi and the failure of the court to give same, that it would not be ground for reversal unless appellant requested special instruction covering that question and it was refused, and it was further held in that case that the charge given sufficiently covered that question. The charge in this case perhaps more strongly presents the question of alibi than was done in the Jones case, supra. Under that authority, this contention of appellant is not well taken."

In this case, the court, in the charge to the jury, told them in the preliminary statement to them of the case that the appellant "stands charged by indictment with having unlawfully engaged in and pursued the business of selling intoxicating liquors in precinct No. 1, in Reeves County, Texas, on or about the 1st day of November, A. D. 1909, and that on or about said date, he, the defendant, did make a sale of intoxicating liquor to one Lucinda Barkley, and did on or about the said date, make a sale of intoxicating liquor to one Becky Goosby, and did make other sales to persons unknown to the grand jury; to which indictment the defendant has pleaded not guilty."

In the next charge the court defined the offense substantially as prescribed by the statute. In the next, he told them that the sale of intoxicating liquor has been prohibited by law in said justice precinct of said county. In the next three paragraphs he charged the jury as follows: "In order to constitute engaging in or pursuing the occupation or business of selling intoxicating liquor, it must appear that defendant pursued such business for profit or gain, and it must be shown that at least two sales of intoxicating liquor had been made by the defendant between the 15th day of July, 1909, and the 9th day of May, 1910.

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Jesus Hernandez, did on or about the 1st day of November, A. D., 1909, and after the 15th day of July, 1909, and prior to the 9th day of May, 1910, in the county of Reeves and State of Texas, and in Justice Precinct No. 1 of said county, engage in and pursue the business of selling intoxicating liquors, and did, on or about the 1st day of November, A. D. 1909, make a sale of intoxicating liquor to one Lucinda Barkley, and did, on or about the said date, make a sale of intoxicating liquor to one Becky Goosby, you will find the defendant guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for any period of years not less than two nor more than five.

"The defendant in this case is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt, and if you have a reasonable doubt of the defendant's guilt, you will acquit him." In the last, he told the jury they were the exclusive judges of the facts proven and the credibility of the witnesses and the weight to be given their testimony, but they must receive the law from the court and be governed thereby.

As stated above, the appellant did not, at any time, request of the court a special charge on alibi. Under the authority of the above two cases, we are of the opinion that even if the testimony authorized or required the court to charge on alibi, as no special charge was requested, no reversible error is shown.

The only other assigned error, presented by appellant in his brief, is in effect that the court erred in not setting aside the verdict and refusing to grant the appellant a new trial because the verdict is contrary to the law and evidence and is unsupported by the evidence in that there was no proof that defendant was engaged in or pursuing the business or occupation of selling intoxicating liquors within the meaning of the law and because the evidence of the said witnesses, Barkley and Goosby, is so incoherent and unintelligible as to preclude the extraction therefrom of any sensible meaning and fixes no dates by which the jury could determine when any such alleged sales were made, if any were made.

As stated in the charge of the court and by our statute, the credibility of the witnesses and the weight to be given to their testimony is exclusively for the jury. After a careful examination of the whole of it and that given above in a statement of the testimony, we are of the opinion that the evidence clearly supports the verdict, and the court did not err in not granting a new trial on that account.

The only other error assigned by appellant is to the definition of what it takes to constitute engaging in or pursuing the occupation or business of selling intoxicating liquor, given by the court, contending it is not correct, and that the court erred in refusing his special charge on that subject, which was laid down as defining those terms in the case of Cohen v. State, 53 Texas Crim. Rep., 422. We take it that perhaps the appellant, after raising this question in the lower court, saw the holding of this court on that subject in the case of Fitch v. State, 58 Texas Crim. Rep., 366, and Clark v. State, 61 Texas Crim. Rep., 597, 136 S. W. Rep., 260, in which it was held that the charge requested by appellant in following the Cohen case had been expressly held not to be the correct definition in the Fitch and Clark cases, and that the charge of the court in this case was substantially in accordance with the holding of this court in the Fitch and Clark cases, hence, did not present the question further for our consideration.

It is our opinion that the charge of the court on this subject in this case was substantially correct and in accordance with the holding of this court in the Fitch and Clark cases, supra.

There being no reversible error pointed out, the judgment will be affirmed.

*Affirmed* ·