### Octavia Banks v. The State.

No. 1581.    Decided June 26, 1912.

Rehearing denied October 23, 1912.

**1.—Murder—Charge of Court—Adequate Cause—Manslaughter.**

Where, upon trial of murder, the defendant was convicted of manslaughter, the contention that the court did not define adequate cause in his charge on manslaughter, presented no error.

**2.—Same—Charge of Court—Alibi.**

Where the court, at the conclusion of his charge on manslaughter, charged upon the law of alibi, the objection that the court mingled and co-mingled his charge on manslaughter with the charge on alibi was untenable; especially where no charge on alibi was requested. Following Jones v. State, 3 Texas Crim. Rep., 131.

**3.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder and a conviction of manslaughter, there was evidence that some other person than defendant committed the offense, and also evidence of self-defense, there was no error in the court's charge, in submitting self-defense, to add thereto that if some other person than defendant did the killing, to acquit.

**4.—Same—Charge of Court—Defensive Theories.**

Where, upon trial of murder, the defensive theories were presented more favorably than necessary, the complaint that these issues were made too prominent, was untenable.

Appeal from the District Court of Tarrant. Tried below before the Hon. Jas. W. Swayne.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lattimore, Cummings, Doyle & Bouldin,* for appellant.—On the question of the court's charge in giving undue emphasis to the issue of self-defense: Anderson v. State, 34 Texas Crim. Rep., 546; Morrison v. State, 37 id., 601; Green v. State, 56 id., 599; Pannell v. State, 54 id., 498; Kauffman v. State, 53 id., 209; Quintanna v. State, 29 Texas Crim. App., 401.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted for murder and when tried was convicted of manslaughter.

The deceased, Eugene Hunt, was living with defendant as his common law wife or paramour. He was killed by being cut with some sharp instrument. Prior to his death he told all to whom he spoke about the matter that he had been to a saloon to get some beer, and when returning home a man with a white hat on ran by him and cut him; that he did not know his name, but would know him if he could see him. His statement completely exonerated appellant.

After the death of Hunt the officers were not satisfied as to the matter, and upon investigation arrested appellant, and charged her with the crime. Daisy McKnight, who at first told the same story as that of Hunt about a negro man cutting him, subsequently said that appellant owed a peddler who called for his money; that trouble arose between appellant and deceased over this matter, and when they came back in the house appellant and deceased began fighting. That she could hear deceased say, "Quit Octavia." That appellant had deceased so he could not fight, having his head under her arm. That she had something in her hand which looked like a fork, and was stabbing him in the head with it. Witness says she separated them, and told deceased to run, when appellant said, "Let me get the butcher knife." That appellant got the butcher knife and witness took it away from her. That appellant and deceased then went out of the room where she was and she heard scuffling. When deceased came back he said, "Oh Daisy, I am cut to death," telling her he had been cut with the potato knife. That she has not seen the potato knife since that day. Mrs. Ella Cook, a white lady who

lived near the home of deceased, says she saw appellant and deceased go out in the street and talk with the peddler, and when they turned and went back in the house appellant was cursing deceased and she heard a table falling and dishes rattling. She says she was close enough to hear them breathing hard after they got in the house, and she then saw deceased run out and say, "Oh, Lordy," running around the house. Officer Waller says he examined the premises and there was blood on the front porch, going from the steps around over the porch into the door and scattered around, like some thing that was bleeding had staggered over the porch, corroborating Mrs. Cook about the way appellant went when she came out of the house.

Appellant denied having any quarrel, and denied cutting deceased, and says deceased came in cut and told her that a tall, brown skinned man, with a wide brim hat had cut him. The jury evidently found that appellant did the killing, and under circumstances that would reduce the offense to manslaughter.

The contention that the court did not define adequate cause as applicable to the facts in this case would probably present error had the jury found her guilty of any higher grade of offense than manslaughter. But inasmuch as that is the offense of which she was adjudged guilty, we are at a loss to understand how any further definition of the offense could be of aid to her, or the court's failure to do so could have resulted in any injury.

At the end of the paragraph on manslaughter the court instructed the jury: "If you believe that the defendant was at another and different place than where the killing occurred, you will find the defendant not guilty; or if you have a reasonable doubt that such was the case you will find the defendant not guilty." The only contention is that this was error because it "mingled and commingled with the charge on manslaughter a charge on alibi." Inasmuch as it is the rule that in case no special charge is requested, it is not necessary to charge on alibi at all, we fail to see how placing this at the end of the instructions on manslaughter could have been hurtful to appellant. It was not mingled nor commingled, but was placed at the end of the instructions on manslaughter. (Jones v. State, 53 Texas Crim. Rep., 131.)

The charge on self-defense is criticised because at the end thereof the court instructed the jury: "If you believe some other person than the defendant stabbed and killed the deceased, or if you have a reasonable doubt as to whether or not that was the case, then you will acquit the defendant." Again it is claimed that because this was placed at the end of this paragraph it was commingled with it. No one could have been misled by the place in the charge this paragraph was inserted. This is one time that complaint is made that the court submitted the issue of self-defense, it being contended that in so doing that it gave undue emphasis to that theory, when

her sole defense was that she did not do it. Daisy McKnight had testified to a fight, saying deceased had appellant around the waist, and appellant had his head under her arm, and they fought clean out of the room. Had the court failed to submit the issue there would doubtless have been ground for complaint. The motion for new trial points out no error in the charge on self-defense, and we do not think the giving of such charge was such error as should cause a reversal of the judgment. The court presented the theory that if deceased did not do the killing, or that the jury had a doubt thereof, they would acquit her.

We have carefully gone over the grounds in the motion for new trial, and none of them present reversible error. This is one instance in which the defensive theories suggested by the evidence were presented more favorably than usual, and about the only complaints are that such issues were made too prominent, or had been commingled by placing it at the end of some other paragraph.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied October 23, 1912. Reporter.]